# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00239-CV

**State of Texas, Office of Public Utility Counsel, and City of Houston, Appellants**

**v.**

**Public Utility Commission of Texas, Appellee**

## DIRECT APPEAL FROM THE PUBLIC UTILITY COMMISSION OF TEXAS

## O P I N I O N

This direct appeal concerns the validity of a rule created to facilitate the transition to a competitive utilities market. Appellants—the State of Texas, the Office of the Public Utility Counsel, and the City of Houston—challenge the provisions governing adjustments to the fuel-factor portion of the price-to-beat rule promulgated in 2001 and amended in 2003 by appellee, the Public Utility Commission of Texas ("the Commission"). *See* 16 Tex. Admin. Code § 25.41(g) (2003); 28 Tex. Reg. 3249 (2003); *see also* Tex. Util. Code Ann. §§ 39.001(e), .202(l) (West Supp. 2004). Besides defending the validity of the rule, the Commission[1] contends that appellants waived their

---

[1] For purposes of this opinion, the term "the Commission" will include parties who intervened and filed briefs supporting the Public Utility Commission of Texas. These intervenors include Alliance for Retail Markets; CPL Retail Energy, L.P.; Reliant Energy Retail Services, L.L.C.; Reliant Resources, Inc.; TXU Energy Retail Company, L.P.; and WTU Retail Energy, L.P.

right to challenge the methodology used to compute the fuel-factor adjustment because they failed to challenge those aspects of the rule when it was originally promulgated in 2001. We will affirm the order adopting the rule as amended.

**BACKGROUND**

In 1999, the Texas Legislature amended the Public Utility Regulatory Act ("PURA") by enacting Chapter 39 "to protect the public interest during the transition to and in the establishment of a fully competitive electric power industry" by 2007. Tex. Util. Code Ann. § 39.001(a) (West Supp. 2004); *see also id.* § 202(a). As part of the transition, the legislature required electric utilities to "unbundle" into three distinct units: (1) power generation companies; (2) transmission and distribution utilities; and (3) retail electric providers. *Id*. § 39.051(b). The unbundled units could be independent or remain affiliated with the other newly unbundled entities. *Id*. § 39.051(c). The legislature intended for the affiliated retail electric providers ("AREPs") to meet competition from retail electric providers entering the deregulated market. *See Reliant Energy, Inc. v. Public Util. Comm'n*, 62 S.W.3d 833, 836 (Tex. App.—Austin 2001, no pet.).

During the transition period, AREPs must provide electricity to residential and small commercial customers at a base rate adjusted by the fuel factor; this adjusted rate is called the "price to beat." Tex. Util. Code Ann. § 39.202. The base rate was six percent less than the rate in effect on January 1, 1999, with certain specified adjustments. *Id*. § 39.202(a). The Commission set the fuel factor for each "electric utility" on December 31, 2001. *Id*. § 39.202(b). The provision at the center of much of the dispute here permits the Commission to adjust the fuel factor up to twice a year if the AREP "demonstrates that the existing fuel factor does not adequately reflect significant

2

changes in the market price of natural gas and purchased energy used to serve retail customers." *Id*. § 39.202(*l*). In 2001, the Commission promulgated rule 25.41 and explained how adjustments to fuel factors would be made. *See* 26 Tex. Reg. 2680, 2704 (2001), *amended in part by* 28 Tex. Reg. 3249, 3266 (2003) (codified at 16 Tex. Admin. Code § 25.41 (2003)).[2]

Rule 25.41, as adopted in 2001, provided that the Commission would gauge changes in the market price of natural gas and purchased energy based on the "average of the closing forward 12-month NYMEX Henry Hub natural gas prices, as reported in the *Wall Street Journal*" over ten consecutive business days.[3] Former rule 25.41(g)(1)(A), (B). The Commission would compare this cumulative average to the cumulative average used to set the existing fuel factor. Former rule 25.41(g)(1)(C). If the new cumulative average differed from the previous cumulative average by more than 4%, the Commission would adjust the fuel factor by the percentage difference. Former rule 25.41(g)(1)(D).

Reliant Energy directly appealed the adoption of the 2001 rule. Reliant contended that the Commission erroneously failed to establish headroom.[4] *See Reliant*, 62 S.W.3d at 836-37. This Court sustained the 2001 rule. *See id*. at 844.

---

[2] For convenience, we will refer to the version adopted in 2001 (*see* 26 Tex. Reg. 2680 (2001)) as the "2001 rule" or "former rule 25.41," and will refer to the version adopted in 2003 (*see* 28 Tex. Reg. 3249 (2003)) as "the 2003 rule" or "rule 25.41."

[3] The NYMEX (New York Mercantile Exchange) index reports the futures prices of natural gas; it is published in the Wall Street Journal. The Commission will compute an average of the prices each day (*see* rule 25.41(g)(1)(A)), then average those averages (*see* rule 25.41(g)(1)(B)).

[4] The Commission defines headroom as "the difference between the price to beat and the sum of non-bypassable charges approved by the Commission." Rule 25.41(c)(3).

In 2003, the Commission amended the rule in several ways. The Commission altered the provisions for adjusting the fuel-factor adjustment, lengthening the NYMEX monitoring period to twenty consecutive trading days, and increasing the gap necessary to qualify for a fuel factor adjustment to a 5% difference. *Compare* rule 25.41(g)(1), *with* former rule 25.41(g)(1). The Commission also added to the provision permitting AREPs to use an electricity commodity index instead of the NYMEX index once it was shown that a sufficiently liquid electricity commodity index existed; the rule now also permits use of a sufficiently liquid electricity commodity "trading hub (or hubs)" in addition to a qualifying index. *Compare* rule 25.41(g)(1)(F), *with* former rule 25.41(g)(1)(F). The Commission also detailed the process for adjustments to the price to beat following certain "true-up" proceedings. *See* rule 25.41(g)(3).[5] The rule originally stated only that the Commission could adjust the price to beat after the true-up proceeding. *See* former rule 25.41(g)(3). The amendments detail how the Commission may adjust both components of the price to beat—the fuel factor and the base rate. *See* rule 25.41(g)(3).

Several entities commented on and criticized the proposed amendments. Many of those entities have filed briefs in this direct appeal, defending and attacking the rule.

---

[5] This Court has considered the validity of the rule establishing the true-up proceedings. *See Reliant Energy, Inc. v. Public Util. Comm'n*, 101 S.W.3d 129 (Tex. App.—Austin 2003, pet. granted). We will not review the true-up proceeding at length because it is not at issue here, but will summarize the process to provide context for the contested rule. The true-up proceeding is the final step of a three-stage process permitting AREPs to recover for the "stranded costs" of investments in power-generating equipment. *Id*. at 134. The costs are "stranded" because they were recoverable in the regulated market, but not in the competitive market. *Id*. The first phase of the process required the AREPs to mitigate the stranded costs, the second phase allowed them to estimate the amount of stranded costs and charge customers a Commission-set rate for that amount, and the third phase—the true-up proceeding—requires the Commission to reconcile the estimated costs with the actual costs. *Id*. at 134-35.

4

**DISCUSSION**

Appellants raise essentially six challenges to rule 25.41.[6] They assert that the rule exceeds the Commission's authority because (1) the rule does not require AREPs to show that both the market price of gas and "purchased energy used to serve retail customers" have significantly increased; (2) the rule does not require AREPs to show that their existing fuel factor is "not adequate"; (3) the use of an electricity commodity index will violate PURA as does the current NYMEX framework; (4) the 45-day time line for contested cases imposed by rule 25.41 violates due process; (5) the rule's provision for post-true-up adjustments violates PURA because it commands automatic adjustments to AREP fuel factors; and (6) the Commission failed to support these amendments with reasoned justifications.

The Commission defends the validity of the rule, but also contends that appellants may not contest provisions of the amended rule that were promulgated through the former rule because appellants did not contest those provisions by direct appeal in 2001. We will begin by considering the challenge to appellants' right to bring this direct appeal.

**Jurisdiction and Waiver**

This Court has jurisdiction over a direct appeal from an agency's action only through a specific grant of statutory authority. *See Yamaha Motor Corp. v. Motor Vehicle Div.*, 860 S.W.2d 223, 230 (Tex. App.—Austin 1993, writ denied); *see also* Tex. Const. art. V, § 6(a). Unless jurisdiction for direct review is explicitly granted, this Court must dismiss the complaint for lack of

---

[6] Although not all issues are raised by all appellants, for simplicity, we will discuss them as if they were because all of the issues concern the validity of a rule that applies generally.

5

subject-matter jurisdiction.  *See id.*  Under PURA, a party seeking judicial review of the validity of competition rules must file a notice of appeal with this Court within fifteen days of the publication of the rule.  *See* Tex. Util. Code Ann. § 39.001(e), (f) (West Supp. 2004).  It is undisputed that appellants' challenges to the current version of rule 25.41 are validity challenges and that the notice of appeal was filed timely.

The Commission argues, however, that the bulk of appellants' challenges are untimely attacks on the 2001 rule.[7]  It contends that appellants waived complaints about the use of market prices and the NYMEX method to adjust fuel factors in the 2003 rule because the methodology is identical to that used in the unchallenged 2001 version of the rule.  It argues that this Court lacks jurisdiction over challenges to parts of rule 25.41 that were not amended in 2003.

PURA permits timely challenge to a "rule" adopted by the commission.  Tex. Util. Code Ann. § 39.001(e), (f).  The statute does not have separate provisions for amended rules or limit the scope of our jurisdiction to challenges to amended subparts of a rule.  *See id.*  In 2003, the Commission promulgated a new version of section 25.41, not just a new version of certain subparts. Thus, we conclude that we have jurisdiction over appellants' challenges to the amended rule.

**Validity of Rule**

This direct appeal is a challenge to the validity of the rule.  *See* Tex. Util. Code. Ann. § 39.001(f).  A validity challenge tests a rule on procedural and constitutional grounds.  *See*

---

[7] The provision detailing the post-true-up procedure undisputedly is a new feature added by the 2003 amendment process; the Commission does not challenge either appellants' right to challenge it or this Court's power to consider that challenge.  *See* rule 25.41(g)(3).

6

*Eldercare Props., Inc. v. Texas Dep't of Human Servs.*, 63 S.W.3d 551, 558 (Tex. App.—Austin 2001, pet. denied). An agency rule is presumed valid, and the challenging party bears the burden to demonstrate its invalidity. *McCarty v. Texas Parks & Wildlife Dep't*, 919 S.W.2d 853, 854 (Tex. App.—Austin 1996, no writ). Absent specific or implied statutory authority, an agency rule is void. *Public Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315 (Tex. 2001). An agency's rules must comport with the agency's authorizing statute, but the legislature does not need to include every specific detail or anticipate all unforeseen circumstances. *Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex. 1992). The law prohibits agencies from exercising what is effectively a new power, or a power contradictory to the statute, based merely on a claim that the power is expedient for administrative purposes. *Public Util. Comm'n v. GTE-Southwest, Inc.*, 901 S.W.2d 401, 407 (Tex. 1995). This Court does not decide matters of policy; we are limited to evaluating whether the Commission acted contrary to the statute. *See Reliant*, 62 S.W.3d at 838. To establish the rule's facial invalidity, a challenger must show that the rule: (1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *See Office of Pub. Util. Counsel v. Public Util. Comm'n*, 104 S.W.3d 225, 232 (Tex. App.—Austin 2003, no pet.).

**Proof required for fuel-factor adjustment**

Appellants complain that the rule does not require AREPs to make the showings required by the statute to obtain an increase of the fuel-factor component of the price to beat. *Compare* rule 25.41(g)(1), *with* Tex. Util. Code Ann. § 39.202(*l*). The statute provides that an

7

AREP may request that the Commission adjust the fuel factor not more than twice a year if the AREP "demonstrates that the existing fuel factor does not adequately reflect significant changes in the market price of natural gas and purchased energy used to serve retail customers." Tex. Util. Code Ann. § 39.202(*l*). The rule includes essentially all of this language, but appellants argue that the procedures do not implement all of its aspects. The amended rule authorizes an adjustment in the fuel factor when there is a 5% change in the average of the NYMEX Henry Hub natural gas prices over a 20-day period; the rule states that, when such a change occurs, the fuel factor is "unreflective of significant changes in the market price of natural gas and purchased energy." *See* rule 25.41(g)(1)(D). Appellants argue that the rule fails to implement the statutory requirements that the AREP show that the market price of natural gas *and* purchased energy used to serve retail customers have significantly increased *and* that the existing fuel factor is inadequate.

Appellants contend that this methodology does not satisfy the statute for several reasons. They complain that using the NYMEX index computation improperly uses a mechanical assessment of adequacy in lieu of an AREP's demonstration that the existing fuel factor is inadequate. Appellants also contend that the exclusive use of the NYMEX natural gas index ignores the market price of purchased energy generated by coal, nuclear, and other sources. They further argue that an AREP's price to beat must be based on that AREP's actual costs of purchased energy because the statute requires an AREP to prove that its own fuel factor is inadequate to reflect market changes. Appellants contend that the legislature thereby meant to require an individualized showing rather than an adjustment based on a broad market index. They argue that, by using only a market-based measure of adequacy to adjust the fuel factor, the Commission essentially renders superfluous

8

every word after "market" in the subsection—especially the words "used to serve retail customers." They complain that the formulaic use of the NYMEX natural gas index improperly permits AREPs to obtain an increase in their fuel factor and price to beat, even if the price they pay for electricity has not increased (due, for example, to lower-than-market, long-term contracts), and even if they do not rely on natural gas for electricity generation.

Appellants further contend that rule 25.41 contravenes the legislative intent to promote competition in order to lower rates because the rule improperly permits electricity rates to rise more than the AREP's actual cost of obtaining that power. Appellants also complain about the Commission's creation of headroom. Appellants cite the following language from the Commission's order adopting the 2001 rules: "It is illogical to remedy [the lack of headroom] problem by increasing the [price-to-beat] to a level that exceeds the rate that these customers would have paid with continued regulation in order that they can 'benefit' from competition." 26 Tex. Reg. at 2691, *quoted in Reliant*, 62 S.W.3d at 842. Appellants complain that the Commission has focused on maintaining the price to beat as an above-market rate with adequate headroom to promote competition to the exclusion of the legislature's additional purposes of providing customers with a prompt reduction from regulated rates. They rely on our statement in *Reliant* that "[a]lthough the Commission *could* ensure adequate initial headroom, nothing in the statute *requires* it to do so." *See Reliant*, 62 S.W.3d at 838 (emphasis in original).

In its 2003 order adopting the amendments, the Commission finds both express and implied support for adjusting fuel factors based on market indices and permitting headroom. Regarding the fuel-factor adjustment, the Commission reads section 39.202(*l*) as a whole, finding

that "market price" is the key term modifying the remainder of the clause. *See* Tex. Util. Code Ann. § 39.202(*l*). The Commission opines that the legislature's use of "market price" is a rejection of the use of the AREP's actual cost of natural gas and energy that helps accomplish the transition to a competitive market. "Basing price to beat fuel factor adjustments solely on the actual costs of the affiliated REP and not the market price of natural gas and purchased energy (as required by statute) will ignore the market prices that non-affiliated REPS must incur to compete against the affiliated REP." 28 Tex. Reg. at 3261. The Commission states that tying an AREP's price to beat to its actual fuel costs would favor the AREP by making entry into the market cost-prohibitive for non-affiliated REPs, and thus would conflict with the Commission's obligation not to discriminate against any participant. *See id.* (citing Tex. Util. Code Ann. § 39.001(c) (West Supp. 2004)).

The Commission used the NYMEX natural gas index to measure changes in the market rate for both natural gas and purchased energy facets of the fuel factor because it concluded that the index is correlated to both facets. The Commission relied on Federal Energy Regulatory Commission findings that the NYMEX index plays an important role in setting benchmark prices and is not susceptible to manipulation. 28 Tex. Reg. at 3263. The Commission found that natural gas price drives the market price of purchased energy because

> natural gas fired generation is the marginal unit dispatched in most hours of the year in Texas, and therefore will set the market price of electricity. . . . [I]rrespective of whether that power is in fact generated by a nuclear or coal generation unit, it will be priced in the marketplace based on the price of the marginal unit, which is gas fired.
>
> . . . .
>
> The available data continues to demonstrate that natural gas prices and electricity prices in ERCOT are significantly correlated, in stark contrast to the assertions to the contrary made by OPC and Cities, State, and Houston. . . . A comparison of changes

10

> in forward natural gas prices and the limited forward electricity prices contained in Platt's MegaWatt Daily also suggest a very high (over 95%) correlation between the two prices.

*Id*. at 3261-62. The Commission also concluded that a 5% change in the NYMEX index over 20 consecutive trading days represents the significance of change necessary to support a change in the fuel factor so that the factor adequately reflects the new market price. *See id*. at 3250. Thus, by showing this change in the NYMEX index, the AREP shows a change in the market price of natural gas, and therefore of purchased energy used to serve retail customers, that is so significant that the Commission deems that it renders the fuel factor inadequate to reflect the relevant market price.

The Commission also found that maintaining headroom by adjusting the price to beat balances the interests of consumers and providers while fomenting competition; the Commission writes that

> the Legislature provided clear indication that it expected there to be adequate headroom under the price to beat for new entrants to be able to effectively compete, and that the price to beat could be adjusted in response to changes in market prices, not the specific costs of a specific REP.

28 Tex. Reg. at 3261. The Commission quotes Representative Steven Wolens, who said to the House of Representatives, "If you want competition, they (competitors) have got to come in, and they got to have headroom to be able to come in and price." *See id*. at 3251 (quoting *Public Utility Regulatory Act: Second Reading of S. B. 7*, 76th Leg., R.S. at 14 (May 20, 1999)). The Commission opines that "if the price to beat does not remain an above-market rate with adequate headroom for new providers to enter the market and be able to profitably compete for retail customers, then retail

11

competition in Texas will not succeed." *Id.* at 3250-51. This is similar to statements in the Commission's 2001 order. *Compare id.*, *with* 26 Tex. Reg. at 2692-93.[8]

Appellants argue that the Commission's interpretation is inconsistent with legislative and administrative history. They contend that the legislature permitted fuel-factor adjustments to protect AREPs from losses that would result if the fuel factor was not adjustable during a time of rising prices, citing statements at a senate hearing. *See Public Utility Regulatory Act: Hearings on S. B. 7 Before the Senate Spec. Comm. on Elec. Util. Restructuring*, 76th Leg., R.S. 18 (March 1,

---

[8] In 2001, the Commission wrote:

> However, the commission also recognizes the undeniable fact that REPs, affiliated or not, will not incur costs after 2002 based on a historic fuel mix; rather, all REPs will be purchasing power in the market. As such, using a measure of the forward market price for electricity at or near the time of the final setting of the initial price to beat fuel factor to establish a benchmark for headroom appropriately reflects the fact that the price to beat may initially be above market in some areas, and below market in others. To the extent that any subsequent changes in market prices cause that headroom to shrink, disappear, or become even more negative, such changes represent significant changes in market conditions that will not be reflected in the setting of the initial fuel factor. Therefore, in accordance with PURA §39.202(*l*), a change to that fuel factor is warranted. To the extent headroom is initially insufficient to allow non-affiliated REPs to compete for price to beat customers in a particular area, competition will clearly not take hold until the market price of generation falls. However, the commission concludes that maintaining at least the initial level of headroom is fully consistent with the intent of SB 7 that the price to beat serve as a protection for customers while still fostering the growth of a robust competitive retail market.

26 Tex. Reg. at 2692-93.

12

1999). Further, Representative Wolens spoke in support of headroom while explaining that utilities wanted the fuel-factor adjustment in order to *lower* their price to beat to match their competitors' prices. *See Public Utility Regulatory Act: Second Reading of S. B. 7*, 76th Leg., R.S. 14-15 (May 20, 1999).

Appellants' arguments do not prove these amendments to rule 25.41 invalid. The rule does not contravene specific statutory language, run counter to the general objectives of the statute, or impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. The rule appears to be a reasoned attempt to effectuate the legislature's intent and to balance competing concerns.[9] We do not find anything in the statute prescribing the means by which AREPs must demonstrate the need for a change in their fuel factor, nor do we find any provision prohibiting the Commission from creating a formulaic means for AREPs to demonstrate that a fuel factor does not adequately reflect a significant change in the market price of energy. The Commission has supported the validity of extrapolating the market cost of electricity from the NYMEX natural gas index. The test is not invalidated either by its simplicity or by the fact that the adequacy of every individual AREP's fuel factor is gauged by the same market-based measure. The scheme incorporates both the individual's costs at the establishment of the price to beat and the behavior of the market during the transition to the competitive market. *See* Tex. Util. Code Ann.

---

[9] The Commission contends in its brief that failure to allow headroom and let the price to beat fluctuate with the market price of power would result in "deregulation gone awry, with the worst possible result for consumers: a monopoly retail provider that can raise its unregulated rates with no competitive constraint." Whether the legislature and the Commission have created a scheme that prevents that unpleasant result is not before us. We assess only whether the Commission has acted within the authority granted it by the legislature.

§ 39.202(a)-(b) (West Supp. 2004). Permitting an AREP's fuel factor, and therefore its price to beat, to fluctuate with the market is reasonably consistent with the legislature's interest in facilitating the entry of competitors into the retail electricity market. We find that the Commission acted within its authority by basing adjustment of the fuel-factor component of the price to beat on fluctuations in the NYMEX index price of natural gas because that index is representative of fluctuations in the relevant market prices of energy.

**Use of an electricity commodity index**

Appellants raise similar challenges to the portion of the rule relating to use of an electricity commodity trading hub or index to assess the adequacy and adjustment of the fuel factor. The 2001 rule required the Commission to permit an AREP to use an electricity commodity index for that purpose only after a showing that a sufficiently liquid index had developed for the region and only after the affiliated power generation company had finalized its stranded cost determination. *See* 26 Tex. Reg. at 2707 (former rule 25.41(g)(1)(F)). The 2003 amendments also allow use of a sufficiently liquid electricity commodity trading hub or hubs, and require that the Commission use the same methodology to adjust the fuel factor based on the electricity index or hubs as it uses with the NYMEX index. *See* 28 Tex. Reg. at 3269 (rule 25.41(g)(1)(F)). Appellants contend that this rule conflicts with the statute by failing to require AREPs to show that the market price of natural gas has increased and that the fuel factor is inadequate to reflect those changes.

We conclude that this challenge is largely premature because at this time there is no sufficiently liquid electricity commodity index or hub that can be utilized by the Commission to

14

adjust the fuel-factor component. Simply referencing such an index or hub does not invalidate the rule.

**The 45-day timeline**

Appellants contend that the timeline for challenges to fuel-factor adjustments violates constitutional due-process guarantees encoded into the Administrative Procedures Act ("APA"). *See* Tex. Gov't Code Ann. § 2001.051 (West 2000). Although the statute does not set a timeline for applications for or challenges to fuel-factor adjustments, the rule provides that, if no hearing is requested within 15 days of the petition, a final order will issue within 20 days after the petition is filed. Rule 25.41(g)(1)(D)(i). If a hearing is requested timely, an order will issue within 45 days after the petition is filed or as soon as practicable thereafter.[10] Rule 25.41(g)(1)(D)(ii). Appellants assert that the 45-day period does not provide sufficient time for adequate presentation of the issues in this controversial fuel-factor adjustment process. They argue that the rule is based on a less contentious fuel-factor adjustment that was not representative of the typical proceeding. They cite the supreme court's decision that criticized a 161-day decision process in which the opposing parties were allowed only 39 minutes of cross-examination. *City of Corpus Christi v. Public Util. Comm'n*, 51 S.W.3d 231, 262 (Tex. 2001). They also contend that the short time-frame depends on the use of the NYMEX index, which they argue is itself improper.

_____

[10] The 2003 amendment added the "as soon as practicable thereafter" provision; it did not alter the pre-existing 45-day period. *See* 27 Tex. Reg. 10840, 10842 (2002). The 2003 amendment also added a provision that the parties could agree to extend the 45-day period and agree to provide interim rate relief. *Id.*

15

We are not persuaded that the rule violates due process. The APA requires that a party have an opportunity for a hearing after reasonable notice of not less than 10 days and the chance to respond and present evidence and argument on each issue involved in the case. *See* Tex. Gov't Code Ann. § 2001.051. The rule meets this plain language. The *Corpus Christi* case does not require a different result. In that case, the court held that the Commission had not adequately explained the need for such speedy resolution and particularly criticized the short cross-examination period. *See Corpus Christi*, 51 S.W.3d at 262. We also note that the supreme court held that the time limits ultimately did not deprive the parties of due process because the dispositive issues were legal, not factual, and the parties failed to show how additional discovery or cross-examination would have changed the result. *See id*. at 262-63. Here, the Commission has explained that the fuel-factor adjustment process should be expedited to provide certainty to the market and to allow companies to respond to market forces promptly. 28 Tex. Reg. at 3264. The Commission has, by use of the NYMEX index, established a relatively straightforward means of substantiating the need for a fuel-factor adjustment; our rejection of appellants' challenge to that method also rebuts their argument against the truncated time period. The simplicity of the process negates the need for a lengthy hearing process. *See id*. Even so, the rule provides some potential for extension of the time-period with the "as soon as practicable" language and provision for agreed extension. *See* rule 25.41(g)(1). Given the need for speedy resolution and the provision of a relatively simple way to assess requests for change of the fuel factor, the Commission has created a rule that provides, at least in the generic case, all of the process that is due. Although it is possible that application of the

16

timeline might violate due process in a particular case, we cannot say that the timeline necessarily deprives all potential contestants of due process.

**Provisions for adjustment of price to beat after true-up proceeding**

Appellants complain that the Commission exceeded its authority in promulgating the provisions that govern adjustments to the price to beat following true-up procedures. *See* rule 25.41(g)(3)(B). The true-up proceeding is the final step in a process permitting AREPs to recoup particular investments made in the regulated market that will be unrecoverable in the competitive market. *See Reliant Energy, Inc. v. Public Util. Comm'n*, 101 S.W.3d 129, 134-35 (Tex. App.—Austin 2003, pet. granted). The true-up proceeding is designed to reconcile charges AREPs made based on estimations of these stranded costs with the charges necessary to compensate for the actual stranded costs. *See id.*; *see also* Tex. Util. Code Ann. § 39.262 (West Supp. 2004). PURA authorizes the Commission to adjust the price to beat after a true-up proceeding. *See* Tex. Util. Code Ann. § 39.202(k) (West Supp. 2004). The challenged portion of the rule prescribes how the Commission will adjust the price to beat after the true-up to maintain the headroom that existed on January 1, 2002. *See* rule 25.41(g)(3). Appellants complain that the rule mandates automatic adjustment of rates in conflict with PURA sections 36.003 and 36.201, and that maintaining headroom is contrary to the statute, which does not mention headroom at all.

Appellants' complaint that the post-true-up adjustment violates particular sections of PURA is not persuasive. Both sections 36.003 and 36.201 by their own terms apply to electric

17

utilities.[11]  *See* Tex. Util. Code Ann. §§ 36.003, .201 (West 1998).  "'Electric utility' . . . does not include . . . a retail electric provider."  *Id*. § 31.002 (6)(H) (West Supp. 2004).  Language in the true-up provision underscores that there is a distinction between an electric utility and an AREP:  "An electric utility, together with its affiliated retail electric provider and its affiliated transmission and distribution utility . . . ."  *Id*. § 39.262(a).  The use of "together with" indicates that the entities are, by nature, separate.  Further, the statutes asserted concern the regulation of rates electric utilities can charge, while rule 25.41 was promulgated under statutes governing the transition to a competitive retail electric market.  *Compare id*. §§ 36.001-.353 (West 1998 & Supp. 2004) *with id*. §§ 39.001-39.910 (West 1998 & Supp. 2004).  Thus the statutes appellants cite do not govern AREPs and cannot render rule 25.41 invalid.

**Reasoned justification for amendments**

Appellants argue that the Commission has not fulfilled its obligation to provide a reasoned justification.  An express purpose of the APA is to provide for public participation in the rulemaking process.  Tex. Gov't Code Ann. §§ 2001.001(2), .021-.034 (West 2000 & Supp. 2004); *see Unified Loans, Inc. v. Pettijohn*, 955 S.W.2d 649, 651 (Tex. App.—Austin 1997, no pet.).  In order to adopt a rule, an agency must provide:  (1) public notice; (2) an opportunity for and full consideration of comments; and (3) a reasoned justification for the rule enacted.  *See* Tex. Gov't

---

[11]  Section 36.003 provides in part: "The regulatory authority shall ensure that each rate an *electric utility* or two or more electric utilities jointly make, demand, or receive is just and reasonable."  Tex. Util. Code Ann. § 36.003(a) (West 1998) (emphasis added).  Section 36.202 provides in part: "the commission on its own motion or on the petition of an *electric utility*, shall provide for the adjustment of the utility's billing . . . ."  *See id*. § 36.202(a) (emphasis added).

Code Ann. §§ 2001.023, .029, .033 (West 2000); *see also McCarty*, 919 S.W.2d at 854. An agency rule not adopted in substantial compliance with the rulemaking provisions of the APA section is voidable. Tex. Gov't Code Ann. § 2001.035(a) (West 2000). To satisfy the reasoned justification requirement, an agency's order adopting a rule must explain how and why the agency reached the conclusion it did. *See Reliant*, 62 S.W.3d at 840. A reasoned justification must include: (1) a summary of comments the agency received from interested parties; (2) a summary of the factual basis for the rule; and (3) the reasons the agency disagrees with a party's comments. Tex. Gov't Code Ann. § 2001.033(a)(1) (West 2000); *Reliant*, 62 S.W.3d at 840.

Our review is limited to the face of the order finally adopting the rule. *See Reliant*, 62 S.W.3d at 840; *see also Methodist Hosps. v. Industrial Accident Bd.*, 798 S.W.2d 651, 659 (Tex. App.—Austin 1990, writ dism'd w.o.j.). In *Methodist Hospitals*, this Court held that the

> question of substantial compliance . . . is a question of law to be determined solely from the face of the [adopting] order. . . . So much is necessarily implied by the statute itself. Substantial compliance is not a question of fact, to be determined by evidence adduced subsequently in a reviewing court, concerning *whether* the agency had *unstated* factual bases for its rule or *unstated* reasons for disagreeing with party submissions and proposals, and *what these were in fact*, or whether any *stated* factual bases or reasons for disagreeing were *in fact* considered and accepted by the agency on *sufficient evidence*.

798 S.W.2d at 659 (emphasis in original). To substantially comply with the reasoned-justification requirement, the four corners of the agency's final notice must present the agency's justification in a relatively clear, precise, and logical fashion. *Reliant*, 62 S.W.3d at 840. Furthermore, an agency's order must accomplish the legislative objectives underlying the reasoned-justification requirement and come fairly within the character and scope of each of the statute's requirements in specific and

19

unambiguous terms.  *See id*. at 841.  The reasoned-justification requirement is intended to give notice of the factual, policy, and legal bases for the rule as adopted or construed by the agency in light of all the evidence gathered by the agency during the comment period in order to ensure that the agency fully considered the comments submitted by interested parties and to provide the factual basis and rationality of the rule as determined by the agency.  *Id*.

We review a challenge to the reasoned justification requirement using an "arbitrary and capricious" standard, with no presumption that facts exist to support the agency's order.  *Id*.  In applying an arbitrary and capricious test to agency rulemaking, we examine whether the agency's explanation of the facts and policy concerns it relied on when it adopted the rule demonstrates that the agency considered all the factors relevant to the objectives of the agency's delegated rulemaking authority and engaged in reasoned decision making.  *Id*.  An agency acts arbitrarily if in making a decision it commits any of the following errors:  (1) does not consider a factor that the Legislature intended the agency to consider in the circumstances; (2) considers an irrelevant factor; or (3) reaches a completely unreasonable result after weighing only relevant factors.  *Id*.

Appellants complain that the Commission failed to provide a reasoned justification for these amendments because it failed to summarize accurately and fully the comments of opponents of the rule and failed to state fairly the basis for the Commission's disagreements with those comments.

The comments appellants claim were omitted relate to evidence from the first five fuel-factor contested cases that the market-based adjustments were bestowing a windfall on the AREPs.  In their comments on the proposed amendments, appellants noted that Reliant was granted

20

a 20% fuel-factor increase even though its own witness testified that it recovered all costs without the increase.[12] They also noted that the administrative law judges who heard three other fuel-factor adjustment cases found the possibility of windfall to the AREPs to be troubling. Appellants wrote that they suspected that there was no relationship between NYMEX futures prices, the prices paid by AREPs for gas and energy used to serve retail customers and the AREPs' existing fuel factors. Appellants urged the Commission to explore those relationships to determine whether the NYMEX indices served any purpose in implementing the legislature's intent. Finally, appellants contended that the Commission's rule was inconsistent with the plain language of the statute, in particular because it failed to give effect to the phrase "used to serve retail customers." Appellants contend that, with the exception of an attempt to discuss the relationship between the NYMEX indices and the AREPs' costs, the Commission failed to mention these arguments in the summary of the comments. Appellants also complain that the summary of their comments concerning the 45-day timeline was too concise.

The Commission mentions concerns about windfalls raised by ongoing contested cases. It does not refer directly to specific facts developed in any ongoing contested case, but it does refer to the "[Office of Public Utility Counsel] and Cities' comments that Reliant's recent filing is proof that REPs have gamed the selection of the rolling average period to 'maximize price increases.'" 28 Tex. Reg. at 3262. The Commission also notes, "Houston argued that the mechanism could increase the price to beat base rates even if the utility's costs have not changed,

_____

[12] Appellants conceded in their comments to the Commission, though not in their brief to this Court, that the witness's statement was excluded from evidence as irrelevant. They nevertheless noted that the witness was under oath and that the truth of his statement was not challenged.

21

or may have even decreased creating a windfall that would flow to the utility's bottom line." *Id*. at 3252. The Commission also writes, "The State cited statements by affiliated REPs that actual financial cost is irrelevant to fuel factor adjustment as reason to discount the affiliated REPs' claims of potential losses; and described the losses which affiliated REPs claim as reduced windfalls, rather than actual losses." *Id*. at 3263. There are other references to parties' concerns about windfalls, but we find no reference by the Commission to comments reporting that administrative law judges were concerned about bestowing windfalls in ongoing fuel-factor-adjustment contested cases.

The windfall issue is substantively raised by the lengthy discussions on parties' criticisms of the appropriateness of the use of the NYMEX index (or natural gas prices in general) to adjust the fuel factor because of the lack of correlation between gas prices and the cost of purchased energy used to serve retail customers. For instance, the Commission notes, "The State suggested that the NYMEX trading index should not be used at all because it does not reflect the prices an affiliated REP has paid for energy purchased to serve retail customers." *Id*. at 3260. The Commission also writes:

> Consumer groups argued that using only gas prices results in a price to beat fuel factor which overstates the actual cost of fuel and purchased power. Houston and OPC and Cities argued that the rule should be amended so that natural gas fuel factor adjustments based on a significant change in natural gas should only be applied to the portion of the initial fuel factor, which was subject to the October 1, 2001 gas price update, not on costs associated with non-gas fired generation. . . . OPC and Cities further stated that basing a price to beat fuel factor change on natural gas prices exaggerates the impact of gas prices upon power market prices. Houston, OPC and Cities stated that ERCOT power prices are poorly correlated with gas price changes . . . .

22

*Id.* The Commission also writes, "OPC and Cities, the State, and Houston all stated that meeting these thresholds for natural gas prices, whether 4.0% or higher, do not by themselves meet the statutory requirement that a demonstration of an increase in the market price of energy used to serve customers be made." *Id.* at 3263. The Commission summarizes comments by appellants while rejecting them, stating, "The commission disagrees with Houston that the market price of natural gas and the market price of electricity in ERCOT are uncorrelated." *Id.* at 3260. The Commission does the same in the following passage:

> The commission disagrees with the comments of the State, Houston, and OPC and Cities that suggest that fuel factor adjustments should, in fact, become a review of all of the power contracts actually executed by the affiliated REP or should result in an adjustment of only a portion of the fuel factor for changes in natural gas prices. The commission disagrees that examining whether or not there have been "significant changes in the market price of natural gas and purchased energy used to serve retail customers" should be interpreted as something other than an examination of current market prices for natural gas and purchased energy.

*Id.* at 3261.

The Commission also lists arguments against the 45-day timeline. The Commission writes:

> The State supported the amendment in subsection (g)(1)(D)(i) and (ii) to increase flexibility in the processing of an affiliated REP's fuel factor adjustment; but argued that the 45-day deadline has no basis in statute, is unprecedented for a contested case at the commission, and is not consistent with fundamental requirements of due process.

*Id.* at 3264. The Commission uses comments favoring the rule to obliquely indicate the substance of the opposition to the rule; it writes: "TXU, in reply comments, disagreed with the State's claim

23

that a 45-day deadline constitutes a denial of due process. TXU argued that if the limited scope of a fuel factor filing under the rule is properly observed, then there should be no issue that requires extensive discovery or litigation." *Id.*

We find that the Commission did not present appellants' comments as fully as it might have. We are concerned by the failure to mention that the administrative law judges who were implementing the rule had expressed concern that the rule was bestowing windfalls. However, we conclude that the Commission nevertheless presented the substance of appellants' comments sufficiently to apprise the public of the concerns raised in the rulemaking process, including the concern that tying the fuel factor to market rates rather than the AREPs' actual fuel costs would lavish windfall profits on the AREPs, as well as concerns about the brevity of the process.

Appellants contend that, because the Commission did not fairly summarize their contentions, it could not adequately state its reasons for disagreeing with them. Appellants cite in particular their argument that, when permitting AREPs to petition for fuel-factor adjustments, the legislature intended that AREPs demonstrate losses attributable to rising wholesale fuel costs before obtaining an increase in the price to beat. Appellants complain that the Commission never addresses these concerns, but simply justifies the use of a 5% threshold to demonstrate a significant change in the market price.

We conclude, however, that the Commission addressed this issue when rejecting appellants' interpretation of the purpose for fuel-factor adjustments. As discussed above, the Commission consistently rejected the contention that the price to beat be tied to the AREPs' actual costs. Concerning the meaning of section 39.202(*l*), the Commission writes:

24

> Notably, this provision does not refer to the actual costs incurred by the affiliated REP to serve retail customer[s]; it refers instead to the market price of natural gas and purchased energy. This provision recognizes that, from the perspective of a new entrant into the marketplace, market prices are what will dictate its ability to compete for service to the retail customer. Again, this supports an interpretation that the Legislature intended that the price to beat remain an above market rate for new entrants.

28 Tex. Reg. at 3258; *see generally id*. at 3260-62. The Commission reasoned that, instead, PURA required it to ignore the AREPs' actual costs:

> Moreover, the arguments made by OPC and Cities and State ignore the fact that new entrants seeking to acquire retail customers will most certainly need to buy all of their power needs from the marketplace. Basing price to beat fuel factor adjustments solely on the actual costs of the affiliated REP and not the market price of natural gas and purchased energy (as required by statute) will ignore the market prices that non-affiliated REPs must incur to compete against the affiliated REP. As discussed previously, the Legislature provided clear indication that it expected there to be adequate headroom under the price to beat for new entrants to be able to effectively compete, and that the price to beat could be adjusted in response to changes in market prices, not the specific costs of a specific REP. Tying price to beat fuel factor adjustments solely to the costs of the affiliated REP would arguably conflict with the directive in PURA § 39.001(c) that the commission "may not make rules . . . (that) discriminate against any participant or type of participant during the transition to a competitive market and in the competitive market."

28 Tex. Reg. at 3261. Under such logic, the AREPs' costs, losses, or profits are irrelevant. While PURA does not require expressly that the Commission consider the effect of these rules on the economic viability of non-affiliated retail electric providers entering the market, the Commission has argued reasonably that it must do so to protect the public's interest in having competitive markets, particularly in the long-term. *See* 28 Tex. Reg. at 3250-52, 3258; *see also* Tex. Util. Code Ann.

§ 39.001 ("the public interest in competitive electric markets requires that . . . prices should be determined by customer choices and the normal forces of competition").

The Commission also rejects challenges to the relevance of the NYMEX index to the market price of purchased energy used to serve retail customers. 28 Tex. Reg. at 3249 ("natural gas and electricity prices are very highly correlated in Texas"), 3260 ("forward natural gas prices compared to forward electric prices for the comparable period of time in ERCOT indicates a very strong correlation"), and 3261-62 ("The available data continues to demonstrate that natural gas prices and electricity prices in ERCOT are significantly correlated, in stark contrast to the assertions to the contrary made by OPC and Cities, State, and Houston. The capacity auction prices cited by Reliant in its reply comments demonstrate a very strong correlation between the two. A comparison of changes in forward natural gas prices and the limited forward electricity prices contained in Platt's MegaWatt Daily also suggest a very high (over 95%) correlation between the two prices."). These excerpts demonstrate why the Commission views the NYMEX index as representative of the cost of natural gas that controls and correlates to the price of purchased energy that is used to serve retail customers, thus explaining the Commission's decision to use its fluctuation to assess and adjust the fuel factor.

The Commission also refutes comments on other subjects that appellants argue were omitted. The Commission explains that the 45-day period for orders on petitions for fuel-factor adjustments is sufficient because of the simplicity of the process and the need for expeditious resolution. *Id*. at 3264. With respect to windfall profits, the Commission's admissions that a market-based fuel factor will, in times of rising natural gas prices, likely lead to fuel charges that

26

exceed the AREPs' actual fuel costs is essentially an acceptance of possible interim windfalls to AREPs as a cost of the transition to competitive markets that will, theoretically, lead to lower prices for consumers. *See, e.g.*, *id.* at 3257, 3261, 3263.

We conclude that the Commission's order is sufficiently thorough and responsive to be a reasoned justification and not arbitrary or capricious.

### CONCLUSION

Having resolved all the issues in this direct appeal in favor of the Commission, we sustain rule 25.41, adopted as amended in 2003.

_____

Mack Kidd, Justice

Before Chief Justice Law, Justices Kidd and Puryear

Affirmed

Filed:  March 11, 2004