# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00735-CV

**Appellants, Physician Assistants Business Alliance of Texas, LLC; Richard Branson, PA-C; Shawn Mollica, PA-C; and Will Thompson, PA-C // Cross-Appellants, Texas Medical Board; Texas Physician Assistant Board; and Mari Robinson in Her Official Capacity as Executive Director of the Texas Medical Board and the Texas Physician Assistant Board**

**v.**

**Appellees, Texas Medical Board; Texas Physician Assistant Board; and Mari Robinson in Her Official Capacity as Executive Director of the Texas Medical Board and the Texas Physician Assistant Board // Cross-Appellees, Physician Assistants Business Alliance of Texas, LLC; Richard Branson, PA-C; Shawn Mollica, PA-C; and Will Thompson, PA-C**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. D-1-GN-12-001216, HONORABLE GISELA TRIANA, JUDGE PRESIDING

## MEMORANDUM OPINION

The Physician Assistants Business Alliance of Texas, LLC and physician assistants Richard Branson, Shawn Mollica, and Will Thompson (collectively, the Alliance) filed a declaratory-judgment action seeking invalidation of a rule promulgated by the Texas Medical Board imposing certain restrictions on business entities jointly owned by physicians and physician assistants (PAs). The Board and the Alliance each filed a motion for summary judgment, after which the trial court entered a final judgment upholding part and invalidating part of the challenged rule. Each party appeals the portion of the judgment contrary to its interests. For the reasons discussed below, we will affirm the judgment in part and reverse and render in part.

**BACKGROUND**

In 2011 the Texas Legislature enacted House Bill 2098 (HB 2098), adding several new sections to the Business Organizations Code and the Occupations Code to regulate business entities formed by PAs and physicians. *See* Act of May 24, 2011, 82d Leg., R.S., ch. 782, §§ 1-7, secs. 22.0561, 152.0551, 162.530, 204.209, 301.012, 2011 Tex. Gen. Laws 1818, 1818-21 (codified at Tex. Bus. Orgs. Code §§ 22.0561, 152.0551, 301.012 and Tex. Occ. Code §§ 162.053, 204.209) (HB 2098). HB 2098 placed restrictions on the ability of PAs to manage and control business entities they jointly own with physicians. *See* Tex. Bus. Orgs. Code §§ 22.0561(b), (c), 152.0551(b), (c), 301.012(a-2), (a-3) (PA may not be officer or general partner of entity and may not contract with or employ physician to be supervising physician of PA or of any physician in entity).

The Act also placed restrictions on the ownership interests of PAs: "A physician assistant or combination of physician assistants may have only a minority ownership interest in an entity created under this section. The ownership interest of an individual physician assistant may not equal or exceed the ownership interest of any individual physician owner." *Id.* §§ 22.0561(f), 152.0551(f), 301.012(a-6). The Act also contained a grandfather provision, central to this dispute, which reads:

> The restrictions on ownership interests in Sections 22.0561, 152.0551, and 301.012, Business Organizations Code, apply to an ownership interest acquired on or after the effective date of this Act. An ownership interest acquired before the effective date of this Act is governed by the law in effect at the time the interest was acquired, and the former law is continued in effect for that purpose.

HB 2098 § 6 (uncodified).

2

The Board then promulgated Rule 177.16, substantively tracking the requirements of HB 2098 except for the grandfather provision; instead, the Rule's grandfather provision reads:

> Restrictions on ownership interests, [sic] shall apply only to those entities formed on or after June 17, 2001. However, if the ownership interests of an entity changes [sic], or an entity contracts with a new supervising physician to provide services, then the restrictions on ownership shall apply to the entity.

22 Tex. Admin. Code § 177.16(f) (2015) (Tex. Med. Bd., Physician Assistants). Additionally, the Rule imposes a new requirement that "[p]hysician assistants who solely own an entity or jointly own an entity with a non-physician must annually submit a form to the Board providing the date of formation of the entity, each person's ownership interest in the entity, proof of ownership, and proof of date of formation, along with required fees." *Id.* (e). The corresponding sections of HB 2098 require annual reports and fees from "a physician who jointly owns an entity with a physician assistant" and "a physician assistant who jointly owns an entity with a physician" but do not address entities owned solely by PAs. HB 2098 §§ 4-5 (Tex. Occ. Code §§ 162.053(a), (b), 204.209(a), (b)).

The Alliance filed a declaratory-judgment action seeking to invalidate Board Rule 177.16 to the extent that it purports to (1) impose any requirements on entities owned solely by Pas and (2) impose HB 2098's restrictions on previously existing jointly owned entities upon either a change in a PA's supervising physician or a change in the entity's ownership interests. The Alliance sought additional declarations, on which the trial court ruled, but those rulings are not before us on appeal.[1]

---

[1] For instance, the Alliance sought a declaration that certain provisions of HB 2098 are invalid and unconstitutional, either facially or as applied, because they constitute illegal impairments of contracts, takings, denial of due process, and retroactive laws.

3

Three of the trial court's conclusions are before us on appeal: (a) HB 2098 does not apply to entities which are owned solely by PAs (conclusion no. 2); (b) the provisions of HB 2098 are not triggered by changing the supervising physician of an entity or of any PA in an entity existing before the effective date of the Act unless the change is accompanied by a change in ownership interests (conclusion no. 3); and (c) a change in any ownership interest—whether that of a physician or a PA—will bring an entity jointly owned by physicians and PAs, as well as its owners, under the restrictions of the Act (conclusion no. 4).

## DISCUSSION

Because the issues in this appeal involve statutory construction, we review the trial court's conclusions de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We first look to a statute's plain language to ascertain and give effect to legislative intent. *Employees Ret. Sys. of Tex. v. Jones*, 58 S.W.3d 148, 154 (Tex. App.—Austin 2001, no pet.). If a statute is unambiguous, we look no further beyond the literal text. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006). Courts construe agency rules in the same manner as statutes, striving to give effect to the agency's intent and following the plain language of the rule unless it is ambiguous. *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999). An agency rule that contravenes specific statutory language; runs counter to the general objectives of the statute; or imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provision is facially invalid. *State Office of Pub. Util. Council v. Public Util. Comm'n of Tex.*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied). The law prohibits agencies from exercising what is effectively a new power, or a power contradictory to the statute, based merely on

4

the claim that the power is expedient for administrative purposes. *Id.* Absent specific or implied statutory authority, an agency rule is void. *Id.*

### The Board's issues on appeal

The Board's first issue asserts that the trial court erred in its conclusion no. 2, which determined that HB 2098 does not apply to entities owned solely by PAs and that Rule 177.16 is contrary to HB 2098 to this extent. Our review of the Act leads us to conclude that the trial court did not err in making this determination. Nothing in the plain language of HB 2098, including the requirement that entities annually submit to the Board a form and fee, indicates that the requirements therein are to apply to entities owned solely by PAs. Rather, each section of the Act imposing any kind of requirements explicitly refers only to entities formed and jointly owned by PAs *and* physicians. *See, e.g.*, Tex. Bus. Orgs. Code § 22.0561 (outlining restrictions on corporations formed by physicians and PAs), Tex. Occ. Code § 204.209 ("physician assistant who jointly owns an entity with a physician shall report annually....").

A rule is void where it conflicts with the plain language of a statute, and a rule may not narrow the scope of a legislatively mandated exception. *Employees Ret. Sys.*, 58 S.W.3d at 154. Rule 177.16's imposition of reporting and other requirements on entities owned solely by PAs directly conflicts with HB 2098, which imposes no requirements on PA-only owned entities. Therefore, to the extent that Rule 177.16 purports to subject entities owned solely by PAs to any of the provisions of HB 2098, it is invalid. *See Public Util. Comm'n*, 131 S.W.3d at 321 (rule imposing additional conditions or restrictions in excess of or inconsistent with statute is invalid). Accordingly, the trial court's conclusion no. 2 is not erroneous, and we overrule the Board's first issue.

5

In its second issue, the Board complains about the trial court's conclusion no. 3, which states: "The provisions of HB 2098 are not triggered by changing the supervising physician of either a jointly owned entity or of any PA in the jointly owned entity for a jointly owned entity in existence prior to the effective date of that Act, unless the change is accompanied by a change in ownership interests as well. Texas Medical Board Rule 177.16(f) is contrary to HB 2098 to this extent." Specifically, the Board contends that a change in an entity's or PA's supervising physician, *independent of a change in ownership interests*, would trigger the provisions of HB 2098 and that Rule 177.16(f), reflecting this contention, is valid. We disagree.

Nothing in the plain language of the Act, including the grandfather provision, speaks to the effect on a previously existing entity when the entity or one of its PA owners obtains a new supervising physician. Rather, the Act hinges the imposition of its restrictions on ownership interests on the *acquisition of an ownership interest* occurring on or after the effective date of the Act.[2] *See* HB 2098 § 6 ("The restrictions on ownership interests . . . apply to an ownership interest acquired on or after the effective date of this Act."). Rule 177.16(f), therefore, overreaches by adding the contingency of a "change in the supervising physician" as a trigger for bringing the entity's ownership interests under the Act's restrictions and is invalid to the extent that it purports to impose those restrictions upon such change. *See Public Util. Comm'n*, 131 S.W.3d at 321. The portion of the trial court's conclusion no. 3 stating that a change in a supervising physician does not trigger the provisions of HB 2098 and that the Board's Rule 177.16(f) is contrary to HB 2098 to that extent is, therefore, not in error. Accordingly, we overrule the Board's second issue.

---

[2] The Alliance appeals the propriety of the second half of conclusion no. 3, which determined that the restrictions in HB 2098 are triggered by a change in an entity's ownership interests. We address this issue infra.

6

*The Alliance's issues on appeal*

The Alliance complains that the trial court's conclusion no. 4 was erroneous, which determined that a change in any ownership interest will bring a jointly owned entity and all of its owners under the restrictions of HB 2098 and that Rule 177.16(f)'s grandfather provision is consistent with the Act to this extent. The Alliance contends that although an ownership interest acquired after the Act's effective date would be governed by the Act's restrictions, the entity's remaining ownership interests would continue to be governed by pre-Act law and that the Rule's grandfather provision overreaches by bringing all the owners of an entity under the Act's ownership restrictions as a result of any "change" in an ownership interest. The Board responds that any time an ownership interest in an entity "changes," that change necessarily results in the "acquisition" of an ownership interest, bringing not only the new interest but all of the remaining interests under the ownership restrictions in the Act. While we agree with the Board that any change in an ownership interest necessarily results in the acquisition by someone of an ownership interest, it does not follow that because this newly acquired interest is governed by the Act's ownership restrictions so are previously existing interests. In fact, the Act's plain language is expressly contrary to such contention.

The Act's grandfather provision does not reference "changes in ownership interests" as the trigger for the imposition of restrictions on ownership interests. Rather, the trigger is the date an "ownership interest [is] acquired," and the Act explicitly exempts ownership interests acquired pre-Act from the restrictions. *See* HB 2098 § 6 ("The restrictions on ownership interests . . . apply to an ownership interest acquired on or after the effective date of this Act. An ownership interest acquired before the effective date of this Act is governed by the law in effect at the time the interest was acquired."). One could contemplate a scenario wherein a PA's ownership interest "changes"

7

by way of a reduction in equity (for instance, if that PA sells a portion of her interest to a physician) but wherein such "change" would not result in that PA "acquiring" an ownership interest. Under the plain language of the Act's grandfather provision, because that PA has not acquired an ownership interest post-Act, her previously acquired ownership interest is expressly governed by pre-Act law and thereby excused from compliance with the new ownership-interest restrictions. By purporting to subject this PA's ownership interest to HB 2098's ownership-interest restrictions due to the "change" (reduction) in equity, the Board's grandfather Rule 177.16(f) impermissibly imposes restrictions that are inconsistent with the Act's grandfather provision. *See Public Util. Comm'n*, 131 S.W.3d at 321. Therefore, we hold that the Board's Rule 177.16(f) is invalid to the extent that it purports to impose HB 2098's ownership restrictions upon any change in ownership interests and, accordingly, the trial court's conclusion no. 4 is erroneous.[3]

## CONCLUSION

Having found no error in the trial court's conclusion no. 2, we affirm that conclusion. We reverse conclusions nos. 3 and 4 and render judgment that Texas Medical Rule 177.16(f) is contrary to HB 2098, and therefore invalid, to the extent that it purports to (a) impose the Act's ownership-interest restrictions upon a change in an entity's ownership interests and (b) impose any ownership restrictions on an entity or its owners upon the entity's or one of its PA-owners' contracting with a new supervising physician. We affirm the trial court's judgment in all other respects.

---

[3] The Alliance also complains about the trial court's conclusion no. 3, determining that a change in an entity's supervising physician will not bring an entity under the restrictions of HB 2098 *unless* the entity's ownership interests also change. Our disposition of the Alliance's issue with respect to the trial court's conclusion no. 4 dispenses with the necessity to address this complaint separately, and we conclude that conclusion no. 3 is also erroneous.

8

_____

David Puryear, Justice

Before Chief Justice Rose, Justices Puryear and Pemberton

Affirmed in Part; Reversed and Rendered in Part

Filed:   February 13, 2015