# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00338-CV

**Gulf Coast Coalition of Cities, Houston Council for Health and Education, and State of Texas, Appellants**

**v.**

**Public Utility Commission of Texas, Appellee**

### DIRECT APPEAL FROM THE PUBLIC UTILITY COMMISSION OF TEXAS

### O P I N I O N

This is a direct appeal challenging the validity of an amendment to the Public Utility Commission's rule governing the recovery of stranded costs in a true-up proceeding.[1] Gulf Coast Coalition of Cities, Houston Council for Health and Education, and the State of Texas (collectively the Ratepayers) challenge the Commission's removal of an express conflict-of-interest provision in the section of the rule that defines who qualifies as an independent financial expert to determine the value of certain affiliated power generation company assets. The Ratepayers contend that by eliminating the conflict-of-interest provision, the Commission has compromised the independence of the financial experts who perform this important role in the true-up proceeding. They assert that

---

[1] This rule, found at 29 Tex. Reg 5338, is to be codified at 16 Tex. Admin. Code section 25.263 (Pub Util. Comm'n) as part of the true-up proceeding rule. Although the Commission's amendment has not yet been codified, we will use its administrative code citation for the sake of clarity and convenience.

the removal of the conflict-of-interest provision is (1) facially invalid because it contravenes the plain language of the statute calling for *independent* financial experts to serve on the valuation panel, and (2) void because the Commission did not substantially comply with the reasoned justification requirements of the Administrative Procedure Act in adopting the amendment. We affirm the Commission's order adopting the amended rule.

## BACKGROUND

In 1999, the legislature amended the Public Utilities Regulatory Act (PURA) to partially deregulate the utility industry in Texas. The legislature found that:

> The production and sale of electricity is not a monopoly warranting regulation of rates, operations, and services and that the public interest in competitive electric markets requires that, except for transmission and distribution services and for the recovery of stranded costs, electric services and their prices should be determined by customer choices and the normal forces of competition.

Tex. Util. Code Ann. § 39.001(a) (West Supp. 2004-05). The new statutory scheme charges the Commission with facilitating recovery of "stranded costs"[2] by the formerly regulated utilities.

The basic concept of stranded costs is straightforward. Under regulation, a utility could recover over time its prudently incurred costs of acquiring power-generation assets through rates approved by the Commission and paid by captive customers. *See Central Power & Light Co.*

---

[2] A "stranded cost" is the positive excess of the net book value of generation assets over the market value of the assets, taking into account all of the electric utility's generation assets, any above market purchased power costs, and any deferred debit related to a utility's discontinuance of the application . . . for generation-related assets. . . ." Tex. Util. Code Ann. § 39.251(7) (West Supp. 2004-05).

*v. Public Util. Comm'n of Texas*, 36 S.W.3d 547, 552-53 (Tex. App.—Austin 2000, pet. denied). The Commission enabled this cost recovery by incorporating depreciation expenses into approved rates. *See id.* at 553. Without this regulation of rates, utilities operating in a competitive market might be unable to recover stranded costs. Competition could drive rates so low that a formerly regulated utility would be unable to recoup its investments. The legislature concluded that if generating plants became uneconomic as a result of legislatively mandated deregulation, it was in the public interest for utilities to be made whole by recovering their full investment in those generation plants. Tex. Util. Code Ann. § 39.001(b)(2); *Centerpoint Energy, Inc. v. Public Util. Comm'n of Texas*, 143 S.W.3d 81, 83 (Tex. 2004). Therefore, in PURA the legislature allowed an electric utility "to recover all of its net, verifiable, nonmitigable stranded costs incurred in purchasing power and providing electric generation service." Tex. Util. Code Ann. § 39.252(a). The legislature provided a comprehensive scheme for estimating, finalizing, and recovering those costs. *Id.* §§ 39.201, .251-.54, .256-.65, .301-.13. Stranded cost recovery, if any, will occur over a period of years rather than in a lump sum. *Id.* §§ 39.201(k), .262(c).

After January 10, 2004, each transmission and distribution utility, its affiliated retail electric provider, and its affiliated power generation company must jointly file with the Commission to finalize stranded costs. *Id.* § 39.262(c). Once the parties have filed, the Commission conducts a "true-up proceeding" to determine whether the utility actually has remaining stranded costs. *Id.* §§ 39.201(l), .262(c). An affiliated power generation company must quantify its stranded costs using one of the methods provided by PURA. *Id.* § 39.262(h)(1)-(4).

3

The Partial Stock Valuation method is an appropriate means of establishing the value of an affiliated power generation company's assets. *Id*. § 39.262(h)(3). This method applies when an electric utility or its affiliated power generation company has transferred generation assets to separate affiliated or nonaffiliated corporations, but only if a certain percentage of the common stock of each such corporation is spun off and sold to public investors through a national stock exchange and is traded for one year or more. *Id*.[3] The Commission may accept the market value or convene a valuation panel of three independent financial experts to determine the valuation of common stock in each transferee corporation. *Id.* The panel must consist of independent experts, from the top ten nationally recognized investment banks with demonstrated experience in the United States electric industry, chosen from proposals submitted in response to Commission requests. *Id.* The Commission's determination, based on the panel's finding, conclusively establishes the value of the common stock of each transferee corporation.

In this case, the Commission attempted to convene a valuation panel to determine the value of the common stock of a particular transferee corporation. The Commission sent out a Request for Proposals to the top ten investment banks as outlined in PURA section 39.262(h)(3). The Commission's Request for Proposals, however, elicited no responses from prospective panelists. On March 26, 2004, the Commission proposed amending its true-up proceeding rule to delete the

---

[3] The average daily closing price of the common stock over 30 consecutive trading days chosen by the Commission out of the last 120 consecutive trading days before the filing required under Subsection (c) shall be presumed to establish the "market value" of the common stock equity in each transferee corporation. Tex. Util. Code Ann. § 39.262(h)(3) (West Supp. 2004-05).

express conflict-of-interest provision.[4]  The stated purpose of the amendment was to attract "a broader group of persons who would be eligible to serve on the valuation panel." 29 Tex. Reg. 5338.

On April 13, 2004, the Commission held a public hearing on the proposed amendment.  The Ratepayers[5] filed written comments detailing their objections to the change.  The Ratepayers asserted that they supported the attempt to increase the number of responses to the Request for Proposals but expressed concern that the amendment would not guarantee the independence of panelists or generate an adequate number of responses from qualified panelists.  Therefore, the Ratepayers urged the Commission to retain an express conflict-of-interest provision in the rule.  They further proposed that the Commission work to expand the potential pool of panelists rather than eliminate the rule's means of securing independent panelists.[6]

In its final order adopting the amendment, the Commission summarized and responded to the Ratepayers' concerns.  The Commission acknowledged that it too was concerned that panelists be independent, as required by PURA section 39.262(h)(3), and that it would "consider

---

[4]  The former conflict-of-interest provision read as follows: "None of the financial experts chosen for the panel shall have participated, or be employed by an investment house or brokerage house which has participated in the business separation, securitization, or other activities related to the implementation of PURA Chapter 39 on behalf of the utility for which the market valuation is being determined."  26 Tex. Reg. 10498 (2001), *amended in part by* 29 Tex. Reg. 5338 (2004) (former 16 Tex. Admin. Code § 25.263(f)(1)(C)(iv)).

[5]  The City of Houston, Coalition of Cities, Office of Public Utility Counsel, and Texas Industrial Energy Consumers filed written comments in conjunction with appellants, but are not parties to this direct appeal.

[6]  Specifically, the Ratepayers suggested that the Commission expand the pool of potential panelists by ignoring the explicit statutory requirement that panelists be selected from the top ten nationally recognized investment banks with demonstrated experience in the United States electric industry.  *See* 29 Tex. Reg. 5338-39; *see also* Tex. Util. Code Ann. § 39.262(h)(3).

5

appropriate conflict-of-interest standards in selecting persons to serve on valuation panels" on a case-by-case basis. 29 Tex. Reg. 5338. The Commission also explained that, while it understood the Ratepayers' fear that the amended rule would still not produce a sufficient number of qualified panelists, this concern was premature and based on speculation that could prove to be false. 29 Tex. Reg. 5339. The Commission declined to alter the amendment in response to the Ratepayers' comments. *Id.*

## DISCUSSION

**Facial Challenge**

In their first issue, the Ratepayers contend that the amended true-up proceeding rule is facially invalid because it eliminates the statutory requirement that panelists be independent. They claim this contravenes the plain language of PURA section 39.262(h)(3).

An agency can only adopt rules that are authorized by and consistent with its statutory authority. *Railroad Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992). The determining factor in whether a particular administrative agency has exceeded its rulemaking authority is whether the rules are "in harmony" with the general objectives of the legislation involved. *Id.*; *Al Boenker Ins. Agency, Inc. v. Texas FAIR Plan Assoc.*, 2004 Tex. App. LEXIS 6827, at *10 (Tex. App.—Austin July 29, 2004, pet. denied). Whether the rules are "in harmony" with the general objectives of the legislation involved is a question of law determined through statutory construction. *Id* at *7-10.

We construe administrative rules as we construe statutes. *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976). Our objective is to determine and give effect to

6

the legislature's intent. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). If a statute's meaning is unambiguous, we look to the plain meaning of the statute. *State v. Gonzales*, 82 S.W.3d 322, 327 (Tex. 2002). We consider the rule as a whole and in relationship to the statute which it implements. *Envoy Med. Sys., L.L.C. v. State of Texas*, 108 S.W.3d 333, 337 (Tex. App.—Austin 2003, no pet.). An agency's interpretation of its own rules is entitled to deference unless it is plainly erroneous. *Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991); *Envoy Med. Sys.*, 108 S.W.3d at 337. When there is vagueness, ambiguity, or room for policy determinations, we defer to an agency's interpretation unless it is plainly inconsistent with the language of the rule. *BFI Waste Sys. of N. Am. v. Martinez Envtl. Group*, 93 S.W.3d 570, 575 (Tex. App.—Austin 2002, pet. denied).

A validity challenge tests a rule on procedural and constitutional grounds. *See State Office of Pub. Util. Counsel v. Public Util. Comm'n*, 131 S.W.3d 314, 327 (Tex. App.—Austin 2004, pet. denied); *Eldercare Props., Inc. v. Texas Dep't of Human Servs.*, 63 S.W.3d 551, 558 (Tex. App.—Austin 2001, pet. denied). This Court does not decide matters of policy; we are limited to evaluating whether the Commission acted contrary to the statute. *State Office of Pub. Util. Counsel*, 131 S.W.3d at 321. We presume that an agency rule is valid, and the challenging party bears the burden to demonstrate its invalidity. *Id.* To establish the rule's facial invalidity, a challenger must show that the rule: (1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *Id.*

7

Here, the Ratepayers argue that the deletion of the conflict-of-interest provision contravenes the specific statutory mandate that panelists chosen to serve on a Partial Stock Valuation panel be independent. The Ratepayers suggest that the Commission must retain an express conflict-of-interest provision in order to secure independent panelists. We disagree.

Although the Commission originally enacted an express conflict-of-interest provision to secure the independence of the panelists, the statute did not require it to do so. Unlike other sections of PURA, section 39.262(h)(3) does not expressly state the manner by which the Commission may establish the independence of prospective panelists. *See, e.g.*, Tex. Util. Code Ann. §§ 12.053 (West 1998) (prohibiting appointment of commissioner employed by public utility), 12.152 (West Supp. 2004-05) (specifically listing conflicts of interest that exclude individuals from eligibility for appointment as commissioner or executive director of Commission). In section 39.262(h)(3), the legislature chose instead to adopt a baseline standard that panelists be independent and then to allow the Commission to determine whether a prospective panelist is independent. The only statutory mandate is that the panelists be independent. How their independence is established is left to the Commission's discretion. While it was within the Commission's discretion to include an express conflict-of-interest provision initially, it was also within the Commission's discretion to delete the provision for the purpose of attracting a larger pool of potential panelists.

In this facial challenge, we do not consider the merits of the Commission's new policy of determining the independence of prospective panelists on a case-by-case basis. *State Office of Pub. Util. Counsel*, 131 S.W.3d at 321. We only decide whether the deletion of an express conflict-of-interest provision contravenes the specific statutory language of PURA section

8

39.262(h)(3).  Although the amended rule lacks an explicit test for determining panelists' independence, it does not eliminate the statutory requirement that the panelists be independent.  Because we construe a rule in relationship to the statute which it implements, *Envoy Med. Sys.*, 108 S.W.3d at 337, the requirement that panelists be independent survives the amended rule.  Therefore, we hold that the amended true-up proceeding rule is not facially invalid.

**Reasoned Justification**

In their second issue on appeal, the Ratepayers challenge the Commission's reasoned justification for the amended rule.  To satisfy the reasoned justification requirement, the Commission's order finally adopting the amendment must explain how and why it reached its conclusion.  *State Office of Pub. Util. Counsel*, 131 S.W.3d at 327; *Reliant v. Public Util. Comm'n of Texas*, 62 S.W.3d 833, 840 (Tex. 2001).  A reasoned justification must include: (1) a summary of comments the agency received from interested parties; (2) a summary of the factual basis for the rule; and (3) the reasons the agency disagrees with a party's comments.  Tex. Gov't Code Ann. § 2001.033(a)(1); *State Office of Pub. Util. Counsel*, 131 S.W.3d at 327; *Reliant*, 62 S.W.3d at 840.  An agency rule not adopted in substantial compliance with the rulemaking provisions of the APA is voidable.  Tex. Gov't Code Ann. § 2001.035(a) (West 2000); *State Office of Pub. Util. Counsel*, 131 S.W.3d at 327.

The question of substantial compliance is a question of law determined solely from the face of the adopting order.  *State Office of Pub. Util. Counsel*, 131 S.W.3d at 327; *see Methodist Hosps. v. Industrial Accident Bd.*, 798 S.W.2d 651, 659 (Tex. App.—Austin 1990, writ dism'd w.o.j.).  To substantially comply with the reasoned justification requirement, the four corners of the

9

final order must (1) present the agency's justification in a relatively clear, precise, and logical fashion; (2) accomplish the legislative objectives underlying the reasoned-justification requirement; and (3) come fairly within the character and scope of each of the statute's requirements in specific and unambiguous terms. *State Office of Pub. Util. Counsel*, 131 S.W.3d at 328; *Reliant*, 62 S.W.3d at 841. The two fundamental goals of the reasoned justification requirement are to ensure the agency fully considered the comments submitted, and to provide the factual basis and rationale of the rule as determined by the agency. *Reliant*, 62 S.W.3d at 841.

We review a challenge to the reasoned justification requirement using an "arbitrary and capricious" standard and do not presume that facts exist to support the agency's order. *Id.* An agency's action is arbitrary if "in making a decision it commits any of the following errors: (1) does not consider a factor that the Legislature intended the agency to consider in the circumstances; (2) considers an irrelevant factor; or (3) reaches a completely unreasonable result after weighing only relevant factors." *Id.*

The Ratepayers claim that the Commission's final order lacks a reasoned justification because (1) it lacks a summary of the factual basis for the rule, and (2) it fails to state the reasons why the Commission disagreed with the written comments submitted by the Ratepayers.

The Ratepayers contend that the Commission's statements that, "[It] has received several responses from apparently qualified . . . respondents," and that the new Request for Proposals contained "clear restrictions" are both unsupported by anything in the rulemaking record and inappropriately refer to uncorroborated events not fully developed within the four corners of the final order. 29 Tex. Reg. 5338-39. Even if the Ratepayers are correct that these statements reference

10

events that are not fully developed or explained in the final order, they have not shown that the Commission failed to include a summary of the factual basis for the amendment.

The Ratepayers' arguments in their brief and at oral argument suggest that our review of the final order should be limited to the final paragraph in which the Commission directly responds to the Ratepayers' written comments. However, our review is not so narrowly confined. *State Office of Pub. Util. Counsel*, 131 S.W.3d at 328; *Reliant*, 62 S.W.3d at 841 (substantial compliance with reasoned justification requirement must be provided within four corners of final order). A review of the final order in its entirety reveals that, in summarizing the Ratepayers' written comments, the Commission provided a summary of the factual basis for the amended true-up proceeding rule. The Commission attempted to convene a valuation panel but its Request for Proposals failed to elicit any responses. 29 Tex. Reg. 5338. The Commission then made a policy decision that in place of an express conflict-of-interest prohibition, it would consider on a case-by-case basis "appropriate conflict-of-interest standards in selecting persons to serve on a valuation panel." *Id.* In their written comments, the Ratepayers observed that the purpose of the proposed amendment was to attract "a broader group of persons who would be eligible to serve on a valuation panel." *Id.* They further noted that they appreciated the Commission's efforts to broaden the pool of prospective panelists. *Id.* We conclude that the final order does contain an adequate summary of the factual basis for the rule.

The Ratepayers also claim that the Commission inadequately explained why it disagreed with the Ratepayers' comments. The Ratepayers expressed concern that the amendment would create a risk that the valuation panel would not be independent, and that, even if the conflict-

11

of-interest provision were removed, qualified persons would be reluctant to serve on a valuation panel. *Id.* The Ratepayers complain that the Commission's responses were inadequate because the Commission combined and responded to their two distinct concerns as if their only real concern was whether the amended rule would attract a sufficient number of independent, qualified respondents. Specifically, the Ratepayers contend that the Commission's following statements do not respond adequately to their concerns: "[It] has already received several responses from apparently qualified . . . respondents," that the new Request for Proposals "contains clear restrictions on performing current or post-agreement work for either Centerpoint or its generation subsidiary," and that "despite this prohibition, the Commission received responses." The Ratepayers note that there is no evidence within the four corners of the final order that either demonstrates that the alleged respondents are independent or that the new Request for Proposals actually contains sufficient restrictions to secure independent panelists. *Id.* at 5339. The Ratepayers additionally argue that the Commission cannot rely on language in the new Request for Proposals to adequately secure independent panelists as it is unlikely that this Request for Proposals will ever be used again. We disagree and hold that the Commission adequately responded to expressed concerns and suggestions of the Ratepayers.

The Ratepayers' initial concern was that the removal of the express conflict-of-interest provision created a risk that a valuation panel may not be independent. The Commission stated that it "shares [Ratepayers'] concern that it be able to select independent, qualified persons to serve on a valuation panel, and it intends to make every reasonable effort to select such a panel." *Id.* The Commission also asserted that it would "consider appropriate conflict-of-interest standards in selecting persons to serve on the valuation panel." *Id.* at 5338. These statements demonstrate that

12

the Commission fully realized that it was statutorily obligated to select independent panelists and that despite the removal of the express conflict-of-interest provision, it would follow the statutory mandate.

Likewise, the Commission's responses make clear that it was also concerned that its efforts to attract a broader group of persons to serve on a valuation panel could fail. However, its characterization of the Ratepayers' fear that potential panelists may be reluctant to serve on a valuation panel as "premature" is accurate based on the facts of this case. *Id.* at 5339. Until the Commission attempts and fails to convene a panel because of lack of interest among potential panelists, the Ratepayers' concern is premature and speculative.

The Ratepayers argue that the Commission did not explain why it disagreed with the Ratepayers' alternate suggestions for changing the proposed rule. The Ratepayers "urge[d] the Commission to include appropriate conflict-of-interest standards in the rule" and also requested "that the Commission seek to fulfill the legislative intent underlying PURA section 39.262 by issuing a Request for Proposals that would seek responses from alternate groups of independent financial experts, including 'buy-side' analysts who do not make their money through transaction fees and trading commissions." *Id.* at 5338-39. The Ratepayers contend that the Commission ignored their suggestions, citing the Commission's comment that "[Ratepayers] in their comments did not specifically suggest that the commission change the proposed rule, and the commission is not making any changes in response to these comments." *Id.* However, we are not persuaded that the Ratepayers' suggestions are sufficiently directed at the proposed rule.

13

The Ratepayers' request that the Commission retain express conflict-of-interest standards in the rule is not a suggestion on how to improve the proposed rule; it is a request that the Commission keep the old rule. *See id.* at 5338. The request adds nothing to the debate over whether it is appropriate for the Commission to establish the independence of prospective panelists on a case-by-case basis. It merely restates the Ratepayers' disagreement with the proposed amendment to the true-up proceeding rule and their preference for the previous version of the rule. It was unnecessary for the Commission to respond more specifically to this request because it adequately addressed the Ratepayers' concern regarding how it would establish the independence of potential panelists under the proposed rule.

The Ratepayers' second suggestion, that the Commission issue a Request for Proposals from alternate groups beyond those provided for by statute, also did not make any request regarding feasible changes to the proposed rule. The suggestion focused on how the Commission could draft future Requests for Proposals to enlarge the pool of prospective panelists, not on the proposed rule. Furthermore, suggesting that the "Commission seek responses from alternate groups of independent financial experts" posits that the Commission ignore an explicit statutory mandate. *See* Tex. Util. Code Ann. § 39.262(h)(3) (stating that valuation panel *must* consist of financial experts, chosen from proposals submitted in response to Commission requests, from top ten nationally recognized investment banks"). Thus, while the Ratepayers' suggestion may increase the number of persons willing to serve on a valuation panel, the Commission does not have the statutory authority to solicit panelists from outside the top ten nationally recognized investment banks. Thus,

the Commission was correct, in regard to the second suggestion, that the Ratepayers did not specifically request that it make any feasible changes to the proposed rule.

We conclude that the Commission's final order adequately explained how and why it reached its conclusion regarding the repeal of the express conflict-of-interest provision from the true-up proceeding rule. Therefore, we overrule the Ratepayers' second issue that the final order was void for lack of a reasoned justification.[7]

## CONCLUSION

We hold that the amended true-up proceeding rule is not facially invalid and that the Commission's order adopting the amended rule contained an adequate reasoned justification. Accordingly, we sustain the validity of the amended rule as enacted by the Commission.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed: March 24, 2005

---

[7] The Ratepayers alternatively request that, if we overrule both their issues, we hold that this Court may review the independence of selected panelists in each contested case. Ratepayers admit that this issue is beyond the scope of this validity challenge. Therefore, any judicial decision on this matter would be an advisory opinion barred by the separation of powers provision of the Texas Constitution. Tex. Const. art. II, § 1; *see Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211 (Tex. 2002); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). We deny the Ratepayers' request for alternative relief and offer no ruling on the propriety of a case-by-case review of the independence of future panelists.