# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00356-CV

**RWE Renewables Americas, LLC and TX Hereford Wind, LLC, Appellants**

**v.**

**Public Utility Commission of Texas, Appellee**

### DIRECT APPEAL FROM THE PUBLIC UTILITY COMMISSION OF TEXAS
### PROJECT NUMBER 52307

## O P I N I O N

In this direct appeal, we consider a challenge to the validity of an Order issued by the Public Utility Commission relating to scarcity pricing in the wholesale electricity market during certain extreme weather events. Appellants RWE Renewables Americas, LLC, and TX Hereford Wind, LLC, contend that the Order constitutes a "competition rule" the adoption of which exceeds the Commission's statutory authority. In addition, they contend the Order was adopted in violation of rulemaking provisions in the Administrative Procedure Act (APA). *See* Tex. Gov't Code §§ 2001.0225-.034. We will reverse the Commission's Order and remand the case to the Commission for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

A detailed discussion of the Texas electricity market appears in this Court's recent opinion in *Luminant Energy Co., LLC v. Public Utility Commission*, 665 S.W.3d 166, 170–74 (Tex. App.—Austin 2023, pet. filed), and will not be repeated here. Relevant for the present

case is the Legislature's statutory finding that "the production and sale of electricity is not a monopoly warranting regulation of rates, operations and services and that the public interest in competitive electric markets requires that . . . electric services and their prices should be determined by customer choices and the normal forces of competition." Tex. Util. Code § 39.001(a). The statute directs the Commission to "authorize or order competitive rather than regulatory methods to achieve the goals of [Chapter 39] to the greatest extent feasible and [] adopt rules and issue orders that are both practical and limited so as to impose the least impact on competition." *Id.* § 39.001(d). Chapter 39 "is enacted to protect the public interest during the transition to and in the establishment of a fully competitive electric power industry." *Id.* § 39.001(a).

In February 2021, a series of weather conditions in Texas resulted in a major winter storm referred to as Winter Storm Uri. *See Luminant*, 665 S.W.3d at 173–76 (describing formation of Winter Storm Uri and its impact on Texas power grid). This became what is called a "load-shed event," which occurs when the Electric Reliability Council of Texas (ERCOT), the Independent System Operator for Texas's electrical grid, directs operators of the transmission system to reduce electricity consumption by involuntarily disconnecting customers from the grid. During the storm, the Commission's members concluded that its "scarcity pricing mechanism" was not functioning as had been expected. *Id.* at 175-76.[1] Specifically, although maximum demand for available power had been reached, the market clearing prices were only at $1,200/MWh, well below the high system-wide offer cap of $9,000/MWh. *Id.* "Finding that the

---

[1] As this Court stated in *Luminant*, the scarcity pricing mechanism is intended to (1) create incentives for idle generation capacity to come online when demand threatens to exceed supply by offering windfall prices to peak generators, and (2) encourage conservation by institutional consumers that have elasticity of demand by "imposing sticker-shock costs on consumption." *Luminant Energy Co., LLC v. Public Util. Comm'n*, 665 S.W.3d 166, 173 (Tex. App.—Austin 2023, pet. filed).

electricity market was clearing as low as $1,200 and that this outcome was 'inconsistent with the fundamental design of ERCOT,' the Commission directed ERCOT 'to ensure that firm load that is being shed in EEA3 [Energy Emergency Alert Level 3—ERCOT's highest alert level] is accounted for in ERCOT's scarcity pricing signals.'" *Id.* (quoting Order Directing ERCOT to Take Action and Granting Exception to Commission Rules, PUC Project No. 51617 (Feb. 15, 2021) (First Order)). The First Order stated that "[i]f customer load is being shed, scarcity is at its maximum, and the market price for the energy needed to serve that load should also be at its highest." First Order at 1. In response to the First Order, ERCOT "adjusted its price algorithm to cause the market to clear at the $9,000/MWh cap." *Luminant*, 665 S.W.3d at 176. The next day, the Commission issued a second order that "was substantially identical to the first, except that it rescinded language in the First Order that would have required retroactive repricing." *Id.* (citing Second Order Directing ERCOT to Take Action and Granting Exception to Commission Rules, PUC Project No. 51617 (Feb. 16, 2021) (Second Order)). The Second Order again "directed ERCOT that, if there was load shed, the market price for the energy needed to serve that load should also be 'at its highest.'" *Id.* ERCOT responded by "issuing settlement statements to market participants reflecting the $9,000/MWh clearing price." *Id.*

In the months following Winter Storm Uri, the Legislature, which was then in session, amended Section 39.151 of the Texas Utilities Code to require that, for ERCOT to maintain certification as an independent organization for the Texas power grid—ERCOT's role—its governing body "must establish and implement a formal process for adopting new protocols or revising existing protocols" and that process "must require that new or revised protocols may not take effect until the commission approves a market impact statement describing the new or revised protocols." Tex. Util. Code § 39.151(g-6). The amendment to

3

Section 39.151 also provided that the Commission "may delegate to an independent organization responsibilities for adopting or enforcing" rules relating to the reliability of the regional electricity network, and that "[r]ules adopted by an independent organization [] under delegated authority from the commission are subject to commission oversight and review and may not take effect before receiving commission approval." *Id.* § 39.151(d). These amendments were effective as of June 8, 2021.

Shortly after the amendments became effective, ERCOT and Potomac Economics, ERCOT's Independent Market Monitor (IMM),[2] filed a Nodal Protocol Revision Request (NPRR) to "modify the calculation of the Real-Time On-Line Reliability Deployment Price Adder." This request for a revision to ERCOT's Nodal protocols was designated as "NPRR 1081." When they submitted NPRR 1081 for consideration, ERCOT and the IMM explained that, "consistent with the action directed by [the Commission]" during Winter Storm Uri, the revision constitutes "a more permanent solution that will modify the calculation of the Real-Time On-Line Reliability Deployment Price Adder" so that when ERCOT is directing operators of transmission systems to shed load during EEA3, the "Real-Time energy prices" would clear at the high system-wide offer cap, which at the time was $9,000/MWh. As the Commission explained in its brief on appeal, the rationale for ensuring that wholesale market prices are at the high system-wide offer cap during periods of load shed is that during those times, "not all demand could be served with available generation supply" and, therefore, "wholesale market prices should reflect that extreme scarcity and rise to the high systemwide

---

[2] As the independent organization certified under Section 39.151, ERCOT was required to "contract with an entity selected by the commission to act as the commission's wholesale electric market monitor to detect and prevent market manipulation strategies and recommend measures to enhance the efficiency of the wholesale market." Tex. Util. Code § 39.1515(a). Potomac Economics served that function and is referred to as the Independent Market Monitor.

offer cap." Put another way, under the scarcity pricing mechanism for the ERCOT market, during extreme scarcity conditions, such as when load is being shed to safeguard the grid, wholesale prices should be at their maximum.

On June 10, 2021, ERCOT's Protocol Revision Subcommittee (PRS) voted to grant NPRR 1081 "urgent" status and to recommend approval of the revision as submitted. ERCOT thereafter posted NPRR 1081 on its website and notified a limited list of interested parties of the proposal. Several provided comments. After the PRS forwarded NPRR 1081 to ERCOT's Technical Advisory Committee (TAC), the TAC voted to recommend its approval. The ERCOT Board of Directors approved NPRR 1081 at its June 28, 2021 meeting. Consistent with the Legislature's recently enacted statutory directive that rules adopted by ERCOT under delegated authority from the Commission "are subject to commission oversight and review and may not take effect before receiving commission approval," *see* Tex. Util. Code § 39.151(d), the Commission opened Docket No. 52307, which Commission Staff explained was to "facilitate Commission review and approval of the rules adopted through the ERCOT stakeholder process," which included NPRR 1081. Commission Staff noted that newly passed legislation "requires both the Commission and [ERCOT] to establish processes for Commission approval of any rules or protocols adopted under authority delegated from the Commission to the independent organization." Commission Staff recommended that the Commission approve NPRR 1081.

On July 16, 2021, the Commission issued its Order Approving Nodal Protocols [Nos. 1080 and 1081] (the Order). The Order states in pertinent part:

> Effective June 8, 2021, rules adopted by ERCOT under delegated authority from the commission are subject to commission oversight and review and may not take effect before receiving commission approval.
>
> . . . .

5

The Commission finds that these revisions are necessary for the proper functioning of the ERCOT market as demonstrated by the supporting material and the Commission issues the following orders:

. . .

2.      The Commission approves NPRR 1081 and the accompanying market impact statement.

RWE and TX Hereford Wind then filed this direct appeal challenging the validity of the Commission's Order approving NPRR 1081. *See id.* § 39.001(e).

Section 39.001(e) of the Utilities Code limits judicial review of the validity of competition rules to the Commission's "rulemaking record" and sets out what comprises the rulemaking record in such a review:

> "Judicial review of the validity of competition rules . . . shall be limited to the commission's rulemaking record. The rulemaking record consists of:
>     (1) the notice of the proposed rule;
>     (2) the comments of all interested persons;
>     (3) all studies, reports, memoranda, or other materials on which the commission relied in adopting the rule; and
>     (4) the order adopting the rule."

*Id.* § 39.001(e).

The Commission's "rulemaking record" from which we are to decide this appeal is meager, to say the least, consisting of only two documents: (1) a PUC "Staff Memo and Proposed Order Approving Nodal Protocols," which was delivered to members of the Commission on July 14, 2021, and (2) the Commission's "Order Approving Nodal Protocols," which was signed by the commissioners on July 16, 2021. In filing these documents with this Court, the Commission asserted its position that NPRR 1081 does not constitute a "rule" and therefore "there is no 'rulemaking record' for the Commission to file." The Commission then explained why it chose to file these two documents: "Because there is no 'rulemaking record,'

6

the Commission has prepared the attached compilation of documents, which consists of the two documents filed in Project No. 52307 from the records of the agency that relate to the protocols approved in the July 16, 2021 order."

## DISCUSSION

The Texas Utilities Code permits challenges to "competition rules" adopted by the Commission. *See id.* § 39.001(e) ("Judicial review of competition rules adopted by the commission shall be conducted under Chapter 2001, Government Code, except as otherwise provided by this chapter."). The Commission asserts that its Order of July 16, 2021, is not a competition rule within the meaning of section 39.001(e) and therefore is not subject to the direct-appeal process provided by that statute. If it is not, this Court lacks jurisdiction over the present direct appeal. We therefore must first decide whether the Order constitutes a "competition rule" such that it may be challenged in this direct appeal. We do that using the APA's definition of "rule."[3]

### Whether NPRR 1081 is a rule

The APA provides that the term "rule" means "a state agency statement of general applicability" that "implements, interprets, or prescribes law or policy." Tex. Gov't Code § 2001.003(6)(A). The definition "includes the amendment or repeal of a prior rule" but does not include "a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures." *Id.* § 2001.003(6)(B), (C).

It is undisputed that NPRR 1081 could have no effect until it received Commission approval. *See* Tex. Util. Code § 39.151(d) (providing that rules adopted by ERCOT

---

[3] No party argues that there is any material distinction between a "competition rule" as used in Section 39.001(e) of the Utilities Code and a "rule" as defined in the APA.

under delegated authority from Commission "may not take effect before receiving commission approval"). Thus, the Order, which gave effect to NPRR 1081, constituted an act by the Commission that "implement[ed]" a pricing policy for periods when ERCOT is directing transmission systems to shed load during EEA3. The Commission disagrees, arguing that the Order constituted only the Commission's review and approval of a revision ERCOT made to its own operating protocols and that the Commission's "approval of ERCOT action is not a rule." But it is not the Commission's approval per se that is relevant here. Rather, it is the *effect* of that approval, which was to put into effect—i.e., "implement"—ERCOT's action. NPRR 1081 is not "a statement regarding only the internal management or organization of a state agency" but is a pricing policy that is intended to, and will, affect the rights of private parties. *See Luminant*, 665 S.W.3d at 187–89 (explaining that similar interim orders at issue in that case "were intended to affect the rights of private parties and in fact did so"). Thus, the Commission's Order, which approved NPRR 1081 and thereby put it into effect, implements or prescribes law or policy within the APA's definition of a "rule."

The Commission also maintains that the Order is not a rule because it is not a "state agency" statement but is simply an agency's "validation of ERCOT's operating standard." We disagree. The Commission's Order did not merely "validate" ERCOT's new protocol, it gave it life. Without the Commission's Order, NPRR 1081 could never have taken effect. The Commission's action was essential to the implementation of the policy announced in NPRR 1081.

The Commission seeks to distance its acts from those of ERCOT and to suggest that ERCOT's actions and proposals are not attributable to the Commission and do not represent the Commission's statements or policies. This ignores the reality of the relationship between the

8

Commission and ERCOT, the independent organization established and certified by the Commission to manage the Texas power grid. *See* Tex. Util. Code § 39.151(a) (providing that power region must establish one or more "independent organizations" to, among other things, ensure reliability and adequacy of regional electrical network).[4] As part of the transition to a deregulated energy market, the Legislature determined that an "independent organization" must oversee the new wholesale electricity market to ensure the adequacy and reliability of the power grid. *See id.* § 39.151(a). The Commission certified ERCOT to fill that statutory role, and it currently performs what are essentially public functions pursuant to power delegated to it by the Commission. *See id.* § 39.151(d) (ERCOT establishes protocols governing power grid "under delegated authority" from Commission). ERCOT's protocols have been held to have the "force and effect of statutes," s*ee Electric Reliability Council of Tex., Inc. v. CPS Energy*, 648 S.W.3d 520, 530 (Tex. App.—San Antonio 2021, pet. granted) (quoting *Public Util. Comm'n v. Constellation Energy Commodities Grp., Inc.*, 351 S.W.3d 588, 595 (Tex. App.—Austin 2011, pet. denied)), and market participants must obey them or incur administrative penalties, *see* Tex. Util. Code § 39.151(j). ERCOT's bylaws must be approved by the Commission and "must reflect the input of the Commission." *Id.* § 39.151(g-1). The Commission's Chairman is, by statute, a member of ERCOT's Board of Directors. *See id.* § 39.151(g-1)(1). And, as already discussed, ERCOT's protocols governing the power market must be approved by the Commission before they can take effect. This Court has described ERCOT as "something akin to a subagency between [the Commission] and market participants"

---

[4] Importantly, the term "independent organization" does not mean independent of the Commission but, rather, independent of other market participants. *See* Tex. Util. Code. § 39.151(b) ("Independent organization means an independent system operator or other person that is sufficiently independent of any producer or seller of electricity that its decisions will not be unduly influenced by any producer or seller.").

and noted that ERCOT, while a separate entity, is one "over which [the Commission] has 'complete authority.'" *Luminant*, 665 S.W.3d at 187. In the regulatory context at least, there is little daylight between the Commission and ERCOT.

Permitting an ERCOT-sponsored protocol, which is essentially a "proposed rule," to evade the APA rulemaking process simply because it originated at ERCOT would allow the Commission to bypass APA rulemaking procedures completely simply by delegating to ERCOT the task of proposing a rule, which would then be implemented by a Commission order that would not be reviewable for APA compliance. The fact that NPRR 1081 was proposed and approved by ERCOT before being approved by the Commission does not, ipso facto, insulate the Commission's Order approving it from being a "state agency statement of general applicability" for purposes of the APA's definition of a "rule."

We conclude that NPRR 1081 falls within the APA's definition of "rule" and, concomitantly, within the term "competition rule" as used in Section 39.001(e) of the Utilities Code. Accordingly, we hold that NPRR 1081 can be challenged through the direct-appeal process provided by that Code. *See* Tex. Util. Code § 39.001(e).

### *Whether the Commission had the authority to adopt NPRR 1081*

In their first issue, RWE and TX Hereford Wind assert that the Commission does not have the statutory authority "when ordering load shed under EEA3, to replace the price of electricity being set by the market with an inflated, fixed price set by the government." They argue that the Commission does not have statutory authority to set a non-market-based price for wholesale electricity under any circumstances and, therefore, that NPRR 1081, which effectively sets the market clearing price for electricity at the high system-wide offer cap during EEA3

10

periods when ERCOT is ordering transmission systems to shed load, is not a valid exercise of the Commission's rulemaking authority.

We presume that an agency rule is valid, and the party challenging the rule has the burden of demonstrating its invalidity. *See Texas State Bd. of Examiners of Marriage & Fam. Therapists v. Texas Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017). To establish a rule's facial invalidity, the challenger must show that the rule (1) contravenes specific statutory language; (2) is counter to the statute's general objectives; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *See id.* A state administrative agency has only the authority expressly provided by statute or necessarily implied in order to carry out the express powers the Legislature has given it. *See Public Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315 (Tex. 2001); *Public Util. Comm'n of Tex. v. GTE- Sw., Inc.*, 901 S.W.2d 401, 407 (Tex. 1995). An agency may not exercise what is effectively a new power on the theory that such exercise is expedient for the agency's purposes. *GTE- Sw.*, 901 S.W.2d at 407.

As mentioned, the Texas Utilities Code mandates that the wholesale price of electricity should, if possible, be set by the market, not by government regulators. RWE and TX Hereford Wind assert that NPRR 1081 is contrary to Section 39.001 of the Code, in which the Legislature stated its intent that the price of electricity should be set by "the normal forces of competition" and that regulatory authorities "may not make rules or issue orders regulating competitive electric services, prices, or competitors or restriction or conditioning competition except as authorized in this title." Tex. Util. Code § 39.001(a), (c). The Commission counters that it had the authority to approve NPRR 1081 as part of its "complete authority" over ERCOT and that NPRR 1081 merely reflects the policy underlying the Commission's scarcity pricing

11

mechanism "that has been part of the agency's rules since 2006." The Commission further argues that NPRR 1081 is a tool that puts in place a "market price"—the high system-wide offer cap—during times of artificially suppressed demand during load shed, i.e., "a tool that makes sure that the actual scarcity of generation is reflected in the pricing model."

As an initial matter, we note that "this Court does not decide matters of policy; we are limited to evaluating whether the Commission acted contrary to the statute." *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, no. pet.). Thus, the Commission's policy reasons for implementing NPRR 1081 do not inform our analysis of whether the Commission's action exceeded its statutory authority.

This Court held in *Luminant* that the Commission exceeds its statutory authority when it "set[s] a single price at the rule-based maximum price" because such action "violate[s] the Legislature's requirement in the Utilities Code Section 39.001(d) that the Commission use competitive methods to the greatest extent feasible and impose the least impact on competition." *See Luminant*, 665 S.W.3d at 191–92. We are bound by that precedent. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022). Accordingly, we hold that NPRR 1081, which effectively sets the market price for wholesale power at periods of ERCOT-ordered load shed during EEA3 at the high system-wide offer cap, exceeds the Commission's statutory authority and is therefore an invalid rule.

### *Whether the Commission substantially complied with mandatory APA rulemaking procedures*

A second—and independent—basis on which we conclude that NPRR 1081 is an invalid rule is the Commission's failure to follow the mandatory rulemaking procedures set forth in the APA. *See* Tex. Gov't Code §§ 2001.023-.034. The Commission does not dispute that

12

NPRR 1081 was not adopted in accordance with all the APA's rulemaking procedures. Instead, it has consistently argued that it did not have to follow those procedures because NPRR 1081 is not a "rule" under the APA's definition. As discussed above, we reject that argument. In the alternative, however, the Commission contends that even if its Order adopting NPRR 1081 constitutes a rule, the "protocol development process" employed by ERCOT substantially complied with the APA's requirements for agency rulemaking. *See* APA §§ 2001.023–.034. This argument necessitates an examination of the relevant statutory provisions to see if the Commission's actions, including its Order, "accomplish[] the legislative objectives underlying the requirement[s]" and "come[] fairly within the character and scope of each of the statute's requirements in specific and unambiguous terms." *National Ass'n of Indep. Insurers v. Texas Dep't of Ins.*, 925 S.W.2d 667, 669 (Tex. 1996) ("*NAII*"); *see also Texas Shrimp Ass'n v. Texas Parks & Wildlife Dep't*, No. 03-04-00788-CV, 2005 WL 1787453, at *2 (Tex. App.—Austin July 27, 2005, no pet.) (mem. op.) ("Substantial compliance with a statutory requirement contemplates acts that secure the legislative objectives while coming fairly within the character and scope of each action or thing required in concise, specific, and unambiguous terms.").

When adopting a rule, an agency is commanded by the APA to follow numerous requirements, which fall into three general categories relevant to this appeal: (1) notice, *see* APA §§ 2001.023–.025; (2) public participation, *see id.* §§ 2001.029–.030; and (3) contents of the agency order, *see id.* § 2001.033. The Commission has statutory rulemaking authority; ERCOT does not. As a result, we believe that only the actions taken by the Commission can satisfy the APA's rulemaking requirements. Nonetheless, because the Commission argues that the procedures utilized by ERCOT to submit and approve NPRR 1081 can be considered in determining whether the Commission substantially complied with APA rulemaking mandates,

we will discuss these three categories of requirements both in terms of their satisfaction by the Commission and in terms of their satisfaction by ERCOT.

## I. *Notice*

### (1) By the Commission

The administrative record does not reveal that the Commission gave any notice to the public of NPRR 1081 before approving the rule.

### (2) By ERCOT

From the administrative record and the procedures described on ERCOT's website, it appears that when an NPRR is administratively complete, the request is posted on ERCOT's website and distributed to ERCOT's Protocol Revision Subcommittee, which currently consists of approximately 14 representatives from seven different types of interested groups.[5] From this we can infer that in the weeks preceding July 16, 2021, ERCOT notified these "stakeholders" of NPRR 1081. Nothing in the administrative record, however, indicates that affirmative notice was given to anyone else.

The APA, however, requires that a state agency "file notice of the proposed rule with the secretary of state for publication in the Texas Register" at least 30 days before it adopts a rule. *See* APA § 2001.023(a), (b). Moreover, the required notice must include a host of details designed to inform the public about the proposed rule, including the text of the proposed rule, the authority under which it is adopted, and the public benefits and costs. *See id.* § 2001.024. The

---

[5] According to ERCOT's website, these groups currently include consumers, cooperatives, independent generators, independent power marketers, independent retail electric providers, investor-owned utilities, and municipals.

14

notice must also include "a request for comments on the proposed rule from any interested person." *See id.* § 2001.024(a)(7).

We reject the notion that posting an NPRR somewhere on ERCOT's website could, without more, constitute substantial compliance with the APA's notice requirements. Members of the public know from the provisions of the APA that they can look to the Texas Register to find proposed agency rules or rule changes. The public does *not* know to search on the website of an individual agency or sub-agency for that information. Accordingly, a notice that is buried on an agency's website does not "accomplish[] the legislative objectives underlying the requirement[s]," nor "come[] fairly within the character and scope of each of the statute's requirements in specific and unambiguous terms." *See NAII*, 925 S.W.2d at 669.

We conclude that providing notice to a few "interested stakeholders" and posting documents on ERCOT's website, even if such actions could somehow be attributed to the Commission, do not substantially comply with the APA's mandatory rulemaking procedures.[6]

## II. Public Participation

### (1) By the Commission

The administrative record does not reveal that the Commission solicited or received any public participation, or even allowed the opportunity for such participation, before adopting NPRR 1081.

### (2) By ERCOT

Section 2001.029 of the APA establishes three public-comment requirements related to rulemaking. First, Section 2001.029(a) of the APA requires a state agency to give "all

---

[6] Nor can we countenance the idea that providing notice to two members of a group called "consumers" is substantial compliance with the APA's mandatory notice to the public.

15

interested persons a reasonable opportunity to submit data, views, or arguments, orally or in writing," before adopting a rule. *See* APA § 2001.029(a). But Section 21.4.4(1) of ERCOT's "Revision Request Process," as described on its current website, specifically identifies who is authorized to comment on a NPRR:

> Any ERCOT Member, Market Participant, the Public Utility Commission of Texas (PUCT) Staff, the Reliability Monitor, the North American Electric Reliability Corporation (NERC) Regional Entity, the Independent Market Monitor (IMM), or ERCOT may comment on a Revision Request.[7]

In other words, not only were members of the public not affirmatively invited to comment on NPRR 1081, ERCOT's own rules expressly disallowed them from doing so.

We conclude that the administrative record does not support a conclusion that the Commission substantially complied with Section 2001.029(a).

Second, Section 2001.029(b) of the APA requires a state agency to grant an opportunity for a public hearing before it adopts a substantive rule if a public hearing is requested by: (1) at least 25 persons; (2) a governmental subdivision or agency; or (3) an association having at least 25 members. The administrative record contains no indication that ERCOT gave anyone an opportunity to request a public hearing before adopting its rule. We conclude that the administrative record does not support a conclusion that the Commission substantially complied with Section 2001.029(b).

Third, Section 2001.029(c) requires a state agency to consider fully all written and oral submissions about a proposed rule. Although the administrative record contains evidence that comments from a handful of "stakeholders" were delivered by ERCOT to the commissioners

---

[7] This section of ERCOT's website is dated January 1, 2021, so it would likely have been in effect at the time NPRR 1081 was proposed.

shortly before the Commission's Order was signed, this cannot take the place of a full and fair opportunity for comments from the public at large. And since ERCOT did not give notice to the public, there is no way to determine who else besides a few of ERCOT's stakeholders might have desired to submit comments. We conclude that the administrative record does not support a conclusion that the Commission substantially complied with Section 2001.029(c).

### III. Contents of the Agency's Order

Section 2001.033(a) of the APA requires that a state agency order finally adopting a rule must include the following:

(1) a reasoned justification for the rule as adopted consisting solely of:
    (A) a summary of comments received from parties interested in the rule that shows the names of interested groups or associations offering comment on the rule and whether they were for or against its adoption;
    (B) a summary of the factual basis for the rule as adopted which demonstrates a rational connection between the factual basis for the rule and the rule as adopted; and
    (C) the reasons why the agency disagrees with party submissions and proposals;
(2) a concise restatement of the particular statutory provisions under which the rule is adopted and of how the agency interprets the provisions as authorizing or requiring the rule; and
(3) a certification that the rule, as adopted, has been reviewed by legal counsel and found to be a valid exercise of the agency's legal authority.

*Id.* § 2001.033(a). This Court has held on numerous occasions that the items listed in section 2001.033(a) must appear in the four corners of the agency's order. *See, e.g.*, *Gulf Coast Coal. of Cities v. Public Util. Comm'n*, 161 S.W.3d 706, 713 (Tex. App.—Austin 2005, no pet.) ("The question of substantial compliance is a question of law determined solely from the face of the adopting order."); *Lambright v. Texas Parks & Wildlife Dep't*, 157 S.W.3d 499, 504 (Tex. App.—Austin 2005, no pet.) ("A reviewing court must confine its search for a reasoned justification to the four corners of the order finally adopting the rule . . . ."); *Office of Pub.*

17

*Util. Couns.*, 131 S.W.3d at 327, ("Our review is limited to the face of the order finally adopting the rule.").

Section 2001.033(a) contains one of the most important requirements imposed by the APA, that the order adopting an agency rule must state a "reasoned justification" for the rule, including the specific elements quoted above in Section 2001.033(a)(1). The Texas Supreme Court has emphasized the importance of this requirement:

> Without an explanation by the Board of its reasoning, we cannot know, and just as importantly, the public cannot know, why the Board reached the conclusions that it did. . . . [T]he Legislature has mandated that the reasoning an agency actually relied on appear in the order. If courts allow agencies to adopt conclusory rules . . . , the purposes of section 2001.033—to provide meaningful public participation in the rulemaking procedure, to allow opponents of the rule to formulate specific challenges, and to ensure that the agency carefully considers and analyzes a rule before adopting it—will be eviscerated.

*NAII*, 925 S.W.2d at 670. Although Section 2001.033(a) was slightly modified in 1999, the Texas Supreme Court has continued to adhere to the principles enunciated in the *NAII* opinion:

> [T]he order must include how and why the agency reached the conclusions it did for adopting the rule, and the conclusions must be presented in a relatively clear, precise, and logical fashion. *Nat'l Ass'n of Indep. Insurers v. Tex. Dep't of Ins.*, 925 S.W.2d 667, 669 (Tex. 1996). The order also must provide (1) a summary of the comments received from interested parties; (2) a restatement of the factual basis for the rule; and (3) the reasons why the agency disagrees with the comments. Tex. Gov't Code § 2001.033(1)(A)-(C); *Nat'l Ass'n of Indep. Insurers*, 925 S.W.2d at 669. If an order fails to substantially comply with these requirements, the rule is invalid. Tex. Gov't Code § 2001.035(a); *Nat'l Ass'n of Indep. Insurers*, 925 S.W.2d at 669. Requiring an agency to demonstrate a rational connection between the facts before it and the agency's rules promotes public accountability and facilitates judicial review. *Nat'l Ass'n of Indep. Insurers*, 925 S.W.2d at 669.

*Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

> Requiring an agency to demonstrate a rational connection between the facts before it and the agency's rules promotes public accountability and facilitates judicial review. It also fosters public participation in the rulemaking process, *see* Tex. Gov't Code § 2001.001, and allows interested parties to better formulate "specific, concrete challenges" to a rule.

*NAII*, 925 S.W.2d at 669–70.

This Court, too, has held that the reasoned-justification requirement is not an empty platitude:

> The essential legislative objective of the reasoned justification requirement is

> "to give notice of the factual, policy, and legal basis for the rule, as adopted or construed by the agency, in light of all the evidence gathered by the agency and submitted by interested parties during the comment period. This overall objective can be broken down into two fundamental goals of the reasoned justification requirement: (1) to ensure the agency fully considered the comments submitted and (2) to provide the factual basis and rationality of the rule as determined by the agency."

*Reliant Energy, Inc. v. Public Util. Comm'n*, 62 S.W.3d 833, 841 (Tex. App.—Austin 2001, no pet.) (quoting *Railroad Comm'n of Tex. v. ARCO Oil & Gas Co.*, 876 S.W.2d 473, 492 (Tex. App.—Austin 1994, writ denied)).

### (1) By the Commission

In the present case, the Commission's Order does not contain any of the matters required by Section 2001.033(a). The Order is a two-page, stand-alone document. It did not incorporate by reference any document that contained the necessary matters. It merely recited generally that the ERCOT board of directors had approved NPRR 1081, that "NPRR 1081 revised ERCOT Nodal Protocol § 6.5.7.3.1," and that "[t]he Commission approves NPRR 1081 and accompanying market impact statement." But the term "NPRR 1081" was simply the

19

number assigned to this particular NPRR. By itself, this reference gave no information that could satisfy the requirements of Section 2001.033(a). A member of the public reading the Commission's Order would have no idea what the revision did, why the Commission had taken its action, whether it was a valid exercise of the Commission's legal authority, who commented on the proposed rule, or any of the other requirements of Section 2001.033(a).

Thus, the Commission's Order does not, within its four corners, include anything that qualifies as a clear, precise, and logical presentation of the Commission's justification for NPRR 1081 as required by Section 2001.033(a). The Commission points instead to a separate PUC Staff memorandum, with attachments prepared by ERCOT Staff, that were delivered to commissioners two days before the Order was signed.

### (2) By ERCOT

The Commission asserts that actions taken by ERCOT constitute substantial compliance with Section 2001.033(a), including the requirement that the Order implementing NPRR 1081 include a reasoned justification for the rule. The Commission's Order itself recites only that "Commission Staff filed a memorandum on July 13, 2021 related to these revisions in which it recommends that the Commission approve the revisions to the Nodal Protocols and to the Other Binding Documents. Attached to the Commission Staff's memorandum were supporting ERCOT documents, which constitute the market impact analysis."

The referenced PUC Staff Memorandum, dated July 14, 2021, was generated in preparation for the commissioners' July 15 meeting. Attached to the Memorandum were three documents: (1) an "Impact Analysis Report," dated June 3, 2021, (2) comments by PUC staff, dated June 22, in support of NPRR 1081, and (3) a "Board Report," dated June 28, summarizing ERCOT's June 28 Board of Directors meeting at which the board approved NPRR 1081.

20

Even were we to determine that these separate documents were somehow part of the four corners of the Commission's Order, the documents do not themselves constitute substantial compliance with APA rulemaking requirements. The Impact Analysis Report summarizes various estimated impacts on ERCOT but does not address any of the matters required by Section 2001.033(a). The PUC staff comments arguably address the factual basis for NPRR 1081, as required by Section 2001.033(a)(1)(B), but nothing more. The Board Report contains a summary of comments received by ERCOT regarding NPRR 1081, *see* APA § 2001.033(a)(1)(A), and addresses the factual basis for the rule, *see* APA § 2001.033(a)(1)(B). It does not, however, contain any statement of reasons why ERCOT disagreed with party submissions. *See* APA § 2001.033(a)(1)(C). And neither the Board Report nor the other two documents address the matters required by APA §§ 2001.033(a)(2) and (a)(3).

Section 2001.033(a) is intended to give notice of the factual, policy, and legal bases for the rule as adopted by the agency in light of all the evidence gathered by the agency during the comment period to ensure that the agency fully considered the comments submitted by interested parties and to provide the factual basis, legality, and rationality of the rule as determined by the agency. *Reliant Energy*, 62 S.W.3d at 841. As discussed above, "[t]o substantially comply with the reasoned-justification requirement, the four corners of the agency's final notice must present the agency's justification in a relatively clear, precise, and logical fashion." *Office of Pub. Util. Counsel*, 131 S.W.3d at 328.

As stated in Section 2001.035, an agency rule is invalid if it is not in "substantial compliance" with the APA's rulemaking requirements. But substantial compliance requires more than a faint effort or hollow rhetoric. "An agency's order substantially complies with the reasoned justification requirement if it (1) accomplishes the legislative objectives underlying the

21

requirement and (2) comes fairly within the character and scope of each of the statute's requirements in specific and unambiguous terms." *NAII*, 925 S.W.2d at 669 (citing *Arco Oil & Gas Co.*, 876 S.W.2d at 492; *Methodist Hosps. v. Texas Indus. Accident Bd.*, 798 S.W.2d 651, 654 (Tex. App.—Austin 1990, writ dism'd w.o.j.)).  Professor Beal has stated it this way:

> [T]he test of substantial compliance should not allow an agency to "fill in the blanks" with meaningless rhetoric and thereby frustrate the legislative intent of reasoned decision making.  The legislative intent undisputably requires a focused analysis by the agency of all relevant factual, policy and legal issues resulting not only in a justification, but a reasoned justification of the rule.

Ron L. Beal, *The Scope of Judicial Review of Agency Rulemaking: The Interrelationship of Legislating and Rulemaking in Texas*, 39 Baylor L. Rev. 597, 688 (1987).

Thus, even if the PUC Staff memorandum and its attachments had been within the four corners of the Commission's Order, those documents do not substantially comply with the requirements of Section 2001.033(a) of the APA.

Finally, the Commission argues that requiring it to follow APA rulemaking procedures would be a "massive waste of precious Commission resources," requiring a duplication of effort between ERCOT and the Commission.  Although forcing the Commission to abide by the APA's mandatory rulemaking procedures would undoubtedly take some time and effort, that misses the point.  The importance of the APA requirements cannot be overstated. The detailed process set forth in the foregoing statutory provisions "assures notice to the public and affected persons and an opportunity to be heard on matters that affect them." *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 715 (Tex. 2008); *accord Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 255 (Tex. 1999).  Indeed, the Legislature deemed it important enough to specify that an express purpose of the APA is to provide for

public participation in the rulemaking process: "It is the public policy of the state through this chapter to . . . provide for public participation in the rulemaking process . . . ." APA § 2001.001(2).

We are not persuaded by the Commission's sky-is-falling argument. First, many of ERCOT's protocol amendments will, in all likelihood, fall outside the APA's definition of "rule." Moreover, given the close association between the Commission and ERCOT, it would seem to be a readily achievable task to accomplish the mandated APA requirements of notice, public participation, and order contents in an efficient, coordinated process.

From our review, we conclude the Commission complied with few, if any, of the requirements of APA Sections 2001.023-033. The myriad ways in which the Commission failed to comply with mandatory APA requirements for adopting or amending a rule cannot be characterized as "technical defect[s]," *see id.* § 2001.035(d), and, as discussed above, its actions in approving NPRR 1081 do not qualify as "substantial compliance" with the APA's mandatory rulemaking procedures, *see id.* § 2001.035(c).

The Legislature could have exempted the Commission from the APA requirements, at least with respect to the adoption or approval of ERCOT protocols, but it did not. And that is the Legislature's call, not that of this Court. The job of the courts is to ensure that the law—as passed by the Legislature—is followed when agencies adopt rules. The Texas Supreme Court has recognized the importance of that job:

> Judicial review of administrative rulemaking is especially important because, although the executive and legislative branches may serve as political checks on the consequences of administrative rulemaking, the judiciary is assigned the task of policing the process of rulemaking. . . . Given the vast power allocated to governmental agencies in the modern administrative state, and the broad discretion ordinarily afforded those agencies, judicial oversight of the rulemaking

23

> process represents an important check on government power that might otherwise exist without meaningful limits.

*NAII*, 925 S.W.2d at 670 (citing P.M. Schenkkan, *When and How Should Texas Courts Review Agency Rules?*, 47 Baylor L. Rev. 989, 1113 (1995)).

Because we conclude that the Commission has failed to demonstrate that it substantially complied with the APA rulemaking procedures, we hold that NPRR 1081 is, for that separate reason, an invalid rule.

## CONCLUSION

For the reasons stated above, we reverse the Commission's Order and remand the case to the Commission for further proceedings consistent with this opinion.[8]

---

[8] Citing Section 2001.040 of the APA, the Commission requests that if we reverse for a failure to follow APA rulemaking procedures, we should remand and give the Commission a reasonable time to readopt the rule using the proper procedure. *See* APA § 2001.040 ("If a court finds that an agency has not substantially complied with one or more procedural requirements of Sections 2001.0225 through 2001.034, the court may remand the rule, or a portion of the rule, to the agency and, if it does so remand, shall provide a reasonable time for the agency to either revise or readopt the rule through established procedure."). Since our initial holding is that the Commission exceeded its statutory rulemaking authority, Section 2001.040 is not applicable. If a higher court overturns our decision that the Commission exceeded its authority but upholds our decision that the Commission did not substantially comply with the rulemaking procedures of Sections 2001.0225–.034, that court will have the opportunity to address Section 2001.040.

24

_____

J. Woodfin Jones, Justice

Before Justices Baker, Theofanis, and Jones[*]

Reversed and Remanded

Filed:   June 1, 2023

[*]Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).